854

## Richmond

RALPH SOLLITT & SONS CONSTRUCTION COMPANY, A CORPORA-
TION, V. COMMONWEALTH OF VIRGINIA.

January 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Browning, JJ.

The opinion states the case.

*Barksdale & Abbot* and *J. Wallace Ould,* for the plaintiff in error.

*W. W. Martin, Henry R. Miller, Jr.,* and *T. G. Hobbs,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the city of Lynchburg, sustaining a license tax imposed by the Commonwealth upon the plaintiff in error. The agreed statement of facts is as follows:

"Ralph Sollitt & Sons Construction Company is a corporation chartered and doing business by and under the laws of the State of Illinois, with its executive offices at South Bend, Indiana. On November 5, 1930, the company qualified to transact business in Virginia by complying with the provisions of section 3847 of the Code of Virginia;

"That on the 26th day of May, 1932, in the city of Washington, District of Columbia, it entered into a contract with the United States government to construct for the government for the sum of, to-wit, $338,000, its postoffice building, on lands acquired in the city of Lynchburg, State of Virginia, by the Federal government for that purpose

prior to the 1st day of January, 1932, and subsequent to January 1, 1929;

"That the commissioner of the revenue for the city of Lynchburg assessed against the company a State contractor's license tax in the amount of $250 for the privilege of engaging in the business of a contractor in the State of Virginia, the said assessment being for the license year 1932 as a beginner and based upon a gross amount of contracts accepted and to be accepted during the calendar year 1932 in excess of $300,000. At the time of the said assessment the only contract accepted by the company for work done in Virginia during the calendar year 1932, of which the commissioner of the revenue had notice, was the aforesaid contract with the United States government. It is agreed that if the company is assessable with a State contractor's license for the year 1932 the aforesaid assessment of the commissioner of the revenue for the city of Lynchburg was made in accordance with law, and that by virtue of the aforesaid license, when paid for, the company has the privilege of engaging in the business of a contractor anywhere in the State of Virginia without any additional license for the year 1932;

"The company maintains no permanent office in Virginia, other than that required by section 3847 of the Code of Virginia, but now has and will have until the aforesaid contract is completed a temporary office on the above mentioned lands, which office is maintained for the use of a representative of the company who is supervising and will continue to supervise the erection of the aforesaid building;

"That all of the work to be done under the original contract with the United States government has been let by the company to subcontractors by contracts with resident and non-resident individuals and companies, which contracts were entered into by the company in South Bend, Indiana; the copy of the original contract with the United States government and a copy of a contract with a subcontractor (all contracts with subcontractors being sub-

stantially the same) are attached hereto, and made a part of this stipulation, designated as Exhibits 'A' and 'B,' respectively.

"It is further expressly agreed that the above facts are not all of the pertinent facts in this case, but that each party reserves the right to introduce at the hearing oral testimony, or a supplemental stipulation of facts, if such supplemental stipulation can be agreed on between the parties, the said oral testimony or supplemental stipulation, however, not to be in conflict with the facts agreed to herein."

It further appears from the evidence that, under a permit granted to subcontractors of the plaintiff by the city of Lynchburg, practically all of the sidewalks on the three streets adjoining the government property are being used exclusively in the erection of the Federal building, pedestrians being denied access thereto. It also further appears that the contract of plaintiff with the government could not be performed without so using the sidewalks and blocking the streets.

The tax was imposed under the provision of section 176 of the Tax Code (see Code 1930, Appendix, p. 2172), which reads in part:

"Section 176. Contractors, plumbers and steam fitters.

"Any person, firm or corporation accepting orders or contracts for doing any work on or in any building or structure, requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet iron, galvanized iron, metallic piping, tin, lead, electric wiring or other metal or any other building material, or who shall accept contracts to do any paving or curbing on sidewalks or streets, public or private property, using asphalt, brick, stone, cement, wood or any composition, or who shall accept an order for or contract to excavate earth, rock, or other material for foundations or any other purpose, or who shall accept an order or contract to construct any sewer of stone, brick terra cotta or other material, shall be deemed a contractor; * * *.

"Every such contractor, plumber and steam fitter, for the privilege of transacting business in this State, shall pay a license, to be ascertained in the following manner: * * * ."

The first contention of the company is that the tax statutes cannot be construed to impose a license tax against the company, for the reason that the company is not transacting the business of a contractor in Virginia. We are unable to concur in that contention. The proof shows conclusively that it is a physical impossibility for the company to execute its contract without that which, in effect, amounts to an appropriation of the State's property, to the denial, as a matter of fact, of the right of citizens to its usual and proper use. If, then, the manual execution of the company's contract requires that it be executed in part within the State, in contradistinction to its execution wholly within the confines of government property, then it must follow that the license tax imposed is within the purview of the statute requiring a license for the privilege of transacting business in this State.

The further contention is that the tax statutes are not applicable to the tax imposed, for the reason that it is sought to extend the State's jurisdiction to property over which the Federal government has exclusive legislative jurisdiction, under article I, section 8, clause 17, of the Federal Constitution; and because the statutes infringe upon the due process clause of the fourteenth amendment.

It is conceded by the Commonwealth that the Federal government has acquired the fee in the land upon which it proposes to erect the postoffice building in the city of Lynchburg. Were it possible for the company to carry out its contract without appropriating to its use the streets of the city, in the manner pointed out, the levy of the tax would be void. The mere use of the highways in common with citizens of the State cannot constitute a basis for the imposition of the license. The basis of the tax, however, is found in the distinction between general

use and sole appropriation of the highway. In its last analysis it conclusively appears that the company is not performing its contract solely upon government property; it is in no sense an instrumentality of the government.

■ It has been repeatedly held by the Supreme Court of the United States that the States, when they entered the Union, did not surrender their power to tax Federal agencies doing business in the States for personal profit.

In *Thomson* v. *Union Pacific Railroad,* 9 Wallace (U. S.) 579, 591, 19 L. Ed. 792, the court said:

"We do not doubt the propriety or the necessity, under the Constitution, of maintaining the supremacy of the general government within its constitutional sphere. We fully recognize the soundness of the doctrine, that no State has a 'right to tax the means employed by the government of the Union for the execution of its powers.' But we think there is a clear distinction between the means employed by the government and the property of agents employed by the government. Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means.

■ "No one questions that the power to tax all property, business and persons, within their respective limits, is original in the States and has never been surrendered. It cannot be so used, indeed, as to defeat or hinder the operations of the National government; but it will be safe to conclude, in general, in reference to persons and State corporations employed in government service, that when Congress has not interposed to protect their property from State taxation, such taxation is not obnoxious to that objection.

"We perceive no limits to the principle of exemption which the complainants seek to establish. It would remove from the reach of State taxation all the property of every agent of the government. Every corporation engaged in the transportation of mails, or of government property of any description, by land or water, or in sup-

plying materials for the use of the government, or in performing any service of whatever kind, might claim the benefit of the exemption."

In *Union Pacific Railroad Company* v. *Peniston,.* 18 Wall. (85 U. S.) 5, 29, 21 L. Ed. 787, Mr. Justice Strong quotes with approval the following holding in *Lane County* v. *Oregon,* 7 Wallace 77, 19 L. Ed. 101:

"In respect to property, business, and persons within their respective limits, the power of taxation of the States remained, and remains entire, notwithstanding the Constitution. It is, indeed, a concurrent power (concurrent with that of the general government), and in the case of a tax upon the same subject by both governments, the claim of the United States as the supreme authority must be preferred; but with this qualification it is absolute. The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the States commit the exercise of the power. That discretion is restrained only by the will of the people expressed in the State Constitutions, or through elections, and by the condition that it must not be so used as to burden or embarrass the operations of the national government. There is nothing in the Constitution which contemplates or authorizes any direct abridgment of this power by national legislation. To the extent just indicated it is as complete in the States as the like power within the limits of the Constitution is complete in Congress."

A case directly in point is *Ohio River Contract Company* v. *Gordon,* 244 U. S. 68, 37 S. Ct. 599, 600, 61 L. Ed. 997. In that case Mr. Chief Justice White said:

"The contract company was a corporation organized under the laws of Indiana, and had its principal place of business in that State. At the time in question it was engaged within the geographical limits of the State of Kentucky in constructing, under a contract with the United States government, a canal with locks and dam on the

Ohio river on a piece of land known as the canal reservation, acquired by the United States by purchase or condemnation from the State of Kentucky with the consent of its legislature. While most of the work under the contract was performed on the land thus acquired, the earth and rocks excavated in the construction of the canal were hauled over railroad tracks laid by the defendant company on land outside of the canal reservation, and, through an arrangement with the Kentucky and Indiana Terminal Railway Company, were dumped on its property in the State of Kentucky.

\*   \*   \*   \*   \*   \*   \*   \*   \*

"Conceding, for the sake of argument only, that the canal reservation was within the exclusive legislative jurisdiction of Congress, it is clear from the facts we have stated that the business carried on by the corporation was not confined to the land owned by the United States, since it is admitted that, in order to dispose of the material excavated in the construction of the canal, a line of railway was built which extended beyond the reservation and connected with the tracks of the Kentucky and Indiana Terminal Railway, upon whose property all of the earth and rocks were dumped. This clearly constituted the doing of business within the State and subjected the corporation to the jurisdiction of the Kentucky courts."

To the same effect see *Baltimore Shipbuilding & Dry Dock Company* v. *Baltimore,* 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242.

The statutes under review have been in effect, without material change, since 1902. Their validity is for the first time attacked. The tax imposed is a mere bagatelle, when compared with the material benefit derived by the company in the exclusive use of the State's property.

The judgment of the lower court is plainly right, and will be affirmed.

*Affirmed.*