3 So.2d 316

## O'PRY HEATING & PLUMBING CO. v. STATE.

### 3 Div. 347.

Supreme Court of Alabama.

June 13, 1941.

Rehearing Denied June 30, 1941.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellee.

Ball & Ball, of Montgomery, for appellant.

510

FOSTER, Justice.

This case involves the power of the State to levy and collect a contractor's license on a contractor holding a subcontract for certain features of the improvements erected as a veterans' hospital by the United States on land which it acquired by purchase September 8, 1938.

The question is controlled by the effect of sections 1505, 1506, Code of 1923, and Article 1, section 8, clause 17, Constitution of the United States. The changes made in the Code of 1940 have no application (see Title 59, section 19, Code of 1940). Section 3161, Code of 1923, Code 1940, Tit. 59, § 18, was not here observed.

We held in the case of State v. Blair, 238 Ala. 377, 191 So. 237, that sections 1505 and 1506, supra, had application to land which the Government may have purchased after the enactment of the law of 1903, which was thus codified. This is consent of the State under the Constitution of the United States, supra, and was held to confer on the Government exclusive jurisdiction except as stated, and that in the absence of a contrary intent, acceptance of exclusive jurisdiction by the Government is presumed.

So we have here a situation where the Government has exclusive jurisdiction by the consent of this State over the territory on which the construction work was done, except for the service of process issued out of the courts of the State, since there is nothing to indicate that its acceptance was short of exclusive jurisdiction. Wherever that jurisdiction exists the State has no authority to levy a tax on the privilege of doing business in such territory. Standard Oil Co. v. California, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091.

This holding does not conflict with James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, nor with Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187, nor with Atkinson v. Tax Commission, 303 U.S. 20, 58 S.Ct. 419, 82 L.Ed. 621.

In the Dravo case, supra, the cession by the state was of "concurrent jurisdiction."

In the other two cases the Government did not accept exclusive jurisdiction.

In Standard Oil Co. v. California, supra, it was held that the state could not impose license taxes on sales and deliveries of gasoline to post exchange within a military reservation under the exclusive jurisdiction of the Government.

In Surplus Trading Co. v. Cook, supra, it was held that the state could not lay a tax on personal property, situated in an army mobilization station of the United States purchased by it with the consent of the state, and which such personal property had been previously purchased by defendant from the United States, and had not been removed from the army store houses.

The only question remaining is whether the tax is laid wholly upon activities within the reservation. The agreed statement of facts in paragraph 5, sets out such activities of this appellant in that respect. The Attorney General argues that the following acts were done off the reservation sufficient in their combined force to show that appellant was doing business as a contractor off the reservation: (1) That he purchased and took delivery of tools and supplies to the amount of $1,800 off the reservation. They were incidentally purchased by the foreman as he was going to the reservation on a contract for construction work in it amounting to $188,320. (2) All his employees work in the reservation, but live in the State outside of the reservation. (3) Materials were ordered by telephone in the office in the reservation to without, but they are delivered within it. (4) The money paid employees was received from a bank outside of the reservation, cashing a check sent from Atlanta. There is nothing stored outside the reservation, and no other business activity of appellant done on the outside except to use the streets in transporting shipments from the station to the reservation.

Appellant is a Georgia corporation with its principal office in Atlanta, Georgia, and is not engaged in business in Alabama, except on this job, and has not qualified in Alabama as a foreign corporation. The contract was with the contractor in chief, Algernon Blair, of Montgomery, who prepared the subcontract, signed and mailed it to appellant in Atlanta, where appellant signed it and returned it by mail to Algernon Blair.

The Attorney General cites Sollitt & Sons Const. Co. v. Commonwealth, 161 Va. 854, 172 S.E. 290, 91 A.L.R. 774. The court held that the contractor would not be liable for such license if all the work were done on the reservation. But since he built tool houses on the sidewalks surrounding the Government lot, and practically all of the sidewalks on the three streets adjoining the property were being used exclusively in the erection of the federal building, pedestrians being denied access thereto, it was held that the operations of the contractor were not confined to the reservation.

The purchase of material, and the transportation of material, and the cashing of a check at a local bank is not doing business, as the Attorney General admits, so as to subject appellant to the requirements of a foreign corporation doing business in Alabama. Friedlander Bros. v. Deal, 218 Ala. 245, 118 So. 508.

In the Sollitt case, supra [161 Va. 854, 172 S.E. 291, 91 A.L.R. 774], the court held that "the mere use of the highways in common with citizens of the state cannot constitute a basis for the imposition of a license. The basis of the tax, however, is found in the distinction between general use and sole appropriation of the highway."

In Ohio River Contract Co. v. Gordon, 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997, where this question was involved, the contractor was held liable, "where, in order to dispose of the material excavated, a line of railway had been built by the corporation, extending beyond the reservation, and connecting with the tracks of a railroad company upon whose property within the state all the earth and rocks were dumped."

But, as we have pointed out, it was held in Standard Oil Co. v. California, supra, that a state cannot impose license taxes on sales and deliveries of gasoline to a post exchange in a military reservation.

■ The Attorney General also argues that the law imposing a contractor's license was in effect at the time when the Government took over the reservation, and invokes the principle that municipal laws applicable to the territory at the time it is taken over remain in full force in the territory so taken until abrogated by the United States. Pound v. Gaulding, 237 Ala. 387, 187 So. 468.

■ But a municipal law is "a rule of civil conduct prescribed by the supreme power of a state, commanding what is right and prohibiting what is wrong." 1 Blackstone Comm., page 44. It is said in Vilas v. Manila, 220 U.S. 345, 31 S.Ct. 416, 419, 55 L.Ed. 491, that municipal laws in this connection mean "laws which are intended for the protection of private rights," or "laws which are designed to secure its peaceful use and enjoyment [of property]" or "laws affecting the possession, use, and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity," but not those which are "in conflict with the political character [and] institutions * * * of the new government."

■ We held in Pound v. Gaulding, supra, that the Workmen's Compensation Act of Alabama in effect when the cession was made went into its new ownership. That is an illustration of the effect of this principle. Compare Webb v. White Engineering Corp., 204 Ala. 429, 85 So. 729. But, in our opinion, it does not include legislation of the former sovereign enacted to raise revenue. When the territory goes under the mandate of a new sovereign, the old one cannot enforce in it laws enacted to raise revenue for its own purposes. This is wholly conflicting with the new authority under which it has passed.

The Attorney General advances another ingenious argument which we cannot approve. It is predicated upon the business which is here sought to be licensed. The Act in question, section 348, Schedule 42 of the General Revenue Act of 1935 (General Acts, 1935, page 455, Code 1940, Tit. 51, § 496), imposes the license on a contractor as there defined. And as thus defined, he is one who accepts orders or contracts for doing any work on buildings, or other certain structures, or accepts an order for or contract of certain other sorts. The argument is that the license is not "on the performance of the work, but upon those accepting contracts," regardless of where or in what foreign jurisdiction the acceptance occurred; that "the acceptance of the contract determines whether there is a liability. Where the liability is to be paid depends upon the terms of the contract," that is, the county in which the work is to be done."

The case of Sollitt & Sons Const. Co. v. Commonwealth, supra, was under a license statute in the exact language of our schedule 42, supra. The contract was entered

into by a foreign corporation in the city of Washington to be performed in Virginia for the building of a postoffice in that state. The contractor was held liable as we have shown because he made appropriation of certain streets of the city, even to the exclusion of their use in the ordinary manner by its citizens.

' We do not find any discussion in the opinion of the question presently urged. But the court gave a broader view of the terms of the statute than is now insisted upon for the opinion observes that the levy of the tax would be void if the contractor could have performed it without appropriating to his use the city streets.

■ It is manifest that a state has no power to impose a license on a transaction which occurs in another state, and which is not to be performed, and was not negotiated in whole or in part, in the state seeking to collect the charge, and in which that state has no financial interest. Our case of Brown Plumbing & Heating Co. v. McDowell, 240 Ala. 485, 200 So. 104, refers to this license as a charge for accepting and executing the contract.

The acceptance of this contract is not an incident in a business conducted in Alabama, either by a resident here or by a foreign corporation qualified to do business here, such as was considered by this Court in City of Sheffield v. Home Insurance Co., 234 Ala. 382, 174 So. 779.

But this situation is within the principle declared by the United States Supreme Court in Connecticut General Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 438, 82 L.Ed. 673, as follows: "Hence it is that a state which controls the property and activities within its boundaries of a foreign corporation admitted to do business there may tax them. But the due process clause denies to the state power to tax or regulate the corporation's property and activities elsewhere. * * * St. Louis Compress Co. v. Arkansas, 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297; Compania deTabacos v. Collector, 275 U.S. 87, 48 S.Ct. 100, 72 L.Ed. 177; Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701; Hartford Acc. & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928; Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732; People, ex rel. Sea Ins. Co. v. Graves, 274 N.Y. 312, 8 N.E.2d 872; compare Provident Savings Life Assurance Society v. Kentucky, 239 U.S. 103, 36 S.Ct. 34, 60 L.Ed. 167, L.R.A.1916C, 572."

Not referring to the power of a state to lay an income tax on that which was earned by a resident of the state on business transacted in another state, a state cannot penalize or regulate or interfere with their right to make contracts in another state, and to be there wholly performed. St. Louis Compress Co. v. Arkansas, 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297; Fidelity & Deposit Co. v. Tafoya, 270 U.S. 426, 46 S.Ct. 331, 70 L.Ed. 664.

This does not conflict with the rule announced in Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074, upholding a statute regulating insurance on property within the state.

■ So that the issue reverts in final analysis to whether this contractor wholly performed his contract on territory under the exclusive jurisdiction of another sovereign than Alabama. If so, it was not done in Alabama, and the license is not applicable.

For the reasons which we have stated, we think appellant is not subject to the license on the facts here disclosed. A judgment will be accordingly entered.

Reversed and rendered.

GARDNER, C. J., BOULDIN, and LIVINGSTON, JJ., concur.

### On Rehearing.

FOSTER, Justice.

The Attorney General seems to think that our opinion runs counter to that in Brown Plumbing & Heating Co. v. McDowell, 240 Ala. 485, 200 So. 104.

But we can find nothing in it to that effect, and certainly nothing was so intended. We do not intend to qualify that case, though we intimated that a larger interpretation was probably available as declared in Sollitt & Sons Const. Co. v. Commonwealth, supra, by the Virginia court.

We agree that literally the levy is made upon one accepting such a contract. That is entering into it so as to bind the contractor for its performance. The license is to be issued by the probate judge of the county where his principal office in this State is situated, if he has no such office then of the county where the contract is to be performed.

What we held was that if such a contract is accepted by a foreign corporation in another State, in no respect done in Alabama, and is not to be performed in whole or in part in Alabama, or any territory over which it has jurisdiction, and its acceptance is not an incident to any other business done in Alabama, its acceptance does not subject such corporation to the license here under consideration. This would be wholly outside the power of this State as we pointed out, citing many cases from the United States Supreme Court so holding.

But when the contract is accepted in Alabama, the party doing so becomes a contractor under this statute and must secure his license as required.

If the schedule is to apply only to an acceptance of a contract, what about one which is accepted outside of the State, with no power of the State then to tax it, but it is to be and is later performed in whole or in part in Alabama?

In line with the conclusion manifest in Sollitt & Sons Const. Co. v. Commonwealth, supra, we perhaps would say that the subsequent performance, in whole or in part, in Alabama would unify the acceptance and performance as one Alabama transaction so as to bring the contractor within the influence of this statute.

But in this case it was not accepted in Alabama, either initially or by adoption, and no act or activity in connection with it occurred in territory over which Alabama had jurisdiction insofar as this levy was concerned.

Rehearing overruled.

GARDNER, C. J., BOULDIN and LIVINGSTON, JJ., concur.