# Richmond

## CITY OF PORTSMOUTH v. FRED C. GARDNER COMPANY, INCORPORATED.

January 20, 1975.

Record No. 740074.

Present, All the Justices.

*Daniel R. Hagemeister, Assistant City Attorney (William J. O'Brien, Jr., City Attorney, on brief), for plaintiff in error.*

*(Walton G. Bondurant, Jr.; Moody, McMurran & Miller, on brief), for defendant in error.*

Harman, J., delivered the opinion of the court.

The question for decision here is the right of the City of Portsmouth (City) to levy a business license tax upon Fred C. Gardner Company, Incorporated (Gardner or defendant), a general contractor, who constructed improvements at the Norfolk Naval Shipyard under a contract with the United States Government.

The facts, as agreed to by the parties, are as follows:

"The defendant entered into a contract in 1969 with the United States Government to construct certain facilities within the boundaries of the Norfolk Naval Shipyard. The shipyard is a military reservation under exclusive federal

legislative jurisdiction and is located entirely within the corporate limits of the City of Portsmouth, Virginia. . . . Gardner . . . performed the said contract during 1969 and received gross receipts from the government which total $787,103.00. Prior to and during said period there was in effect a city business license tax measured by gross receipts which was applicable to contractors.

". . . The City . . . instituted the present action to collect the tax. There being no genuine dispute as to any material fact, the City moved for summary judgment. The Trial Court denied the City's motion, and entered summary judgment for Gardner . . . ."

The trial court, by letter opinion, held that the City could not validly levy the license tax upon Gardner as it was exempt, under Code § 54-141(3),[1] from the licensing and registration requirements for contractors under Chapter 7 of Title 54 of the Code. The court also appears to have relied, to some extent at least, upon *Sollitt* v. *Commonwealth,* 161 Va. 854, 172 S.E. 290 (1934), where we said:

"It is conceded by the Commonwealth that the Federal government has acquired the fee in the land upon which it proposes to erect the postoffice building in the [c]ity of Lynchburg. Were it possible for the company to carry out its contract without appropriating to its use the streets of the city, in the manner pointed out, the levy of the [contractor's license] tax would be void . . . ." *Id.* at 859, 172 S.E. at 291.

We reverse. Chapter 7 of Title 54 is a constitutional exercise of the police power designed to protect the public from inexperienced, unscrupulous, irresponsible, or incompetent contractors and, to effectuate this purpose, it requires a demonstration of ability, character, and financial responsibility, as well as a good record of past performance. This chapter is regulatory in character as opposed to Title 58 of the Code which deals with the revenue. One who engages in a regulated business or profession must comply with both the regulatory statutes and the revenue statutes. *Bowen Elec. Co.* v. *Foley,* 194 Va. 92, 72 S.E.2d 388 (1952).

---

[1] This section exempts contractors from registration and licensing under Chapter 7 of Title 54 where work is bid on or undertaken for the Unites States government on land under the exclusive jurisdiction of the federal government.

The City is authorized by its charter, Acts, 1908, Ch. 157, pp. 203-04, to impose a license tax upon ". . . any business, trade, occupation, calling or any other thing . . . for which a State license is or may under the constitution of this State or the constitution and laws of the United States be required . . . ." Code § 58-266.1 permits the council of a city to levy business license taxes on businesses, trades, and professions within the city even though the state does not impose such a tax. Article 5 of Chapter 7, Title 58 of the Code (§ 58-297 *et seq.*) is a revenue measure which levies a state license tax on the gross receipts of contractors. One of the prerequisites for obtaining such a license is that the applicant ". . . furnish proof that he is registered as a contractor . . . under the provision of Chapter 7 (§ 54-113 et seq.), Title 54 of this Code or submit a written statement, supported by an affidavit, that he is not a contractor . . . as defined in § 54-113 of this Code." Code § 58-298. Thus, it appears that the General Assembly has clearly authorized the City, as a revenue measure, to levy and collect a license tax upon contractors who engage in that business in the city.

We must now ascertain whether the imposition of such a tax is prohibited by, or contrary to, the Constitution or laws of the United States. *Sollitt* was decided in 1934, prior to adoption by the Congress in 1940 of the Buck Act, 4 U.S.C. §§ 105-110.

The purpose of that legislation, which granted recession of a limited power of taxation to state and local taxing authorities, was to correct inequities in certain state and local taxes which resulted from the location of federal enclaves within those taxing jurisdictions. *Kiker* v. *City of Philadelphia,* 346 Pa. 624, 31 A.2d 289 (1943).

Section 106 of the Buck Act provides:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

Section 110 (c) of the Act defines an income tax as "any tax levied on, or with respect to, or measured by, net income, gross income or gross receipts."

Gardner argues that the tax here in question is a license tax and not an income tax, and that, accordingly, the Buck Act is not applicable. We do not agree.

In *Howard* v. *Comm'rs of Sinking Fund*, 344 U.S. 624 (1953), the Supreme Court had occasion to consider this same argument in connection with an occupational license tax levied by the City of Louisville upon the gross earnings of employees of a naval ordinance plant located in a federal enclave in that city. Prior to *Howard*, the Kentucky Court of Appeals in *City of Louisville* v. *Sebree*, 308 Ky. 420, 214 S.W.2d 248 (1948), had held the occupational tax was not an income tax under Kentucky law. In upholding the validity of the occupational license tax, the Supreme Court pointed out:

> ". . . But the right to tax earnings within the area was not given Kentucky in accordance with the Kentucky law as to what is an income tax. The grant was given within the definition of the Buck Act, and this was *any* tax measured by net income, gross income, or gross receipts. . . ." 344 U.S. at 628-29.

The Buck Act "income tax," broadly defined as it is, refers to the broad generic class of taxes based upon income. It does not require that the tax be denominated an income tax or that it conform to the federal income tax. If the tax in question is based upon income and is measured by that income in money or money's worth, as a net income tax, gross income tax, or gross receipts tax, it is an income tax. *Humble Oil & Refining Co.* v. *Calvert*, 478 S.W.2d 926, 930 (Tex. 1972).

The tax here imposed by the City is calculated upon the gross receipts of the contractor's business. Although it is denominated a license tax under Virginia law, it meets the definition of an income tax under the Buck Act and, therefore, can be imposed validly by the City.

For these reasons we reverse the trial court and enter judgment here in favor of the City against Gardner for $1,760.03, the amount of the tax and penalty fixed by the City ordinance.

*Reversed and final judgment.*