**In the Matter of VECCO CONSTRUCTION INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 79–224–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 30, 1983.

Stanley J. Samorajczyk, Hazel, Beckhorn & Hanes, Fairfax, Va., for debtor.

Richard A. Golden, Asst. County Atty., Fairfax County, Fairfax, Va., for Bd. of Sup'rs of Fairfax County.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The Board of Supervisors of Fairfax County, Virginia ("the County") filed a claim in this proceeding to recover *inter alia* certain amounts assessed against the debtor for the year 1979 under the County's business, professional and occupational license tax. The debtor has objected to that portion of the claim which assessed the tax against income earned in other jurisdictions and upon which local taxes were paid.

The County claims $13,661.35 is due from the debtor for 1979 on alleged 1978 gross receipts of $11,290,370.00 [1]. The debtor is a concrete construction contractor, and the assessment is based upon total gross receipts for the year 1978. These total gross receipts comprise revenue from construction activities of the debtor in Virginia, Maryland and the District of Columbia. The factual basis for the County's claim that its taxing authority reaches the debtor's total gross receipts, including those earned in Maryland and the District of Columbia, is the location of the debtor's home office within the County.

The debtor argues that the County's interpretation of its taxing statutes to authorize taxation of gross receipts, wherever earned, would violate the Commerce Clause of the United States Constitution [2]. It is the debtor's position that the Commerce Clause, which has been interpreted as protecting interstate commerce from the cumulative burdens of multiple taxation by local jurisdictions, limits the County's taxing authority to gross receipts earned within the County.

The relevant sections of the Fairfax County Code are as follows:

§ 4–7–2. Business, profession, trade or occupation subject to tax.

Each and all of the taxes hereinafter imposed are in all cases imposed upon the privilege of doing business or exercising a profession ... in the County, including all phases of the business, profession, trade or occupation conducted in the County....

§ 4–7–8 sets forth the method for computing the business and professional tax. The tax is computed on gross receipts of the preceding year.

§ 4–7–1(a)(2) defines "gross receipts" to mean gross receipts from all sales or services rendered or activities conducted within the County, both to persons within the County and to persons outside the County....

Fairfax County Code §§ 4–7–1(a)(2), 4–7–2, and 4–7–8 [3].

The Virginia legislature has defined the situs for business license taxation by local jurisdictions in Section 58–266.5(a) of the Virginia Code, which provides:

the situs for the local license taxation for any licensable business, trade, occupation or calling, shall be the town or county (hereinafter called "locality") in which the person so engaged has a definite place of business or maintains an office; provided, however, that if any such person has a definite place of business or maintains an office in any other locality, then such other locality may impose a license tax on him, provided such other

---

1. The County claims $12,419.41 due as tax and $1,241.94 as a penalty for late filing. As a debtor-in-possession operating its business, the debtor is liable for such penalties. *See 3 Collier on Bankruptcy* (14th ed.), ¶ 57.22, pp 385–86 and cases cited therein (1977).

2. U.S. Const. art. I, § 8, cl. 3.

3. The authority of the County to impose local license taxes is statutory. The relevant enabling legislation is Code of Virginia § 58–266.1 (1983 Cum.Supp.).

locality is otherwise authorized to impose a local license tax with respect thereto. Code of Virginia § 58–266.5(a) (1983 Cum. Supp.)[4].

Subsection (b)(i) of § 58–266.5 provides that if two localities impose taxes measured by volume, each may tax only the volume attributable to that business transacted in its own locality. Code of Virginia § 58–266.5(b)(i) (1974 Repl.Vol.).

Evidence adduced on behalf of the debtor indicated that in 1978, the year which provides the basis for the 1979 license tax assessment, the debtor earned $6,718,078.00 from construction activities in Virginia, $4,456,465.00 from projects in Maryland, and $2,656,386.00 from construction work performed in the District of Columbia, for total gross receipts of $13,830,929.00. The debtor paid taxes to Maryland and Virginia based upon the income generated in those jurisdictions.

Of the more than $6-million attributable to Virginia construction projects, $2,798,689.00 came from work performed in Fairfax County. There is, however, no evidence indicating whether the debtor paid local license taxes to any other Virginia jurisdictions on all or portions of the nearly $4-million earned in Virginia but outside the County.

The evidence established further that while the debtor maintained field offices at various construction sites, it had only one fixed or permanent office which, in 1978, was located in the County.

■ The Commerce Clause does not confer upon interstate commerce immunity from all taxation by individual states. The clause itself does not impose a prohibition but, rather, grants to Congress the power to regulate such commerce. The prohibitive effect of the clause on state or local legislation arises from the Supremacy Clause[5] and decisions of the Supreme Court. The Supreme Court repeatedly has permitted the imposition of state taxes which have an impact upon interstate commerce when those taxes meet the following test. Such state taxes are not unconstitutional if they: (1) are applied to activity with a substantial nexus with the state, (2) are fairly apportioned, (3) do not discriminate against interstate commerce, and (4) are fairly related to services provided by the state. *Department of Revenue of the State of Washington v. Association of Washington Stevedoring Companies,* 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978).

In *Association of Washington Stevedoring Companies, supra,* the Supreme Court upheld a state tax on stevedoring, that is the loading and unloading of ships, even though the cargo being handled had been or was destined to be transported in interstate commerce. *Id.* In reaching the decision in *Association of Washington Stevedoring Companies* the Supreme Court relied upon its earlier decision in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). In *Complete Auto,* the Supreme Court upheld a Mississippi state tax on the transport of automobiles. The vehicles were shipped by rail from outside the state to a railhead in Mississippi. The taxed activity was the further transport of the automobiles from the railhead to individual dealers within Mississippi. *Id.* In both cases, the taxed activities took place entirely within the state seeking to impose the tax, rather than in several jurisdictions as in the instant case. Accordingly, the taxes had the required nexus with the state, were fairly apportioned, did not discriminate against interstate commerce, and were fairly related to services and protection rendered by the state.

■ The Virginia Supreme Court has recognized certain constitutional standards as to state taxing powers. In *Commonwealth v. Baltimore Steam Packet Company,* the court upheld a tax that reached the ship-

---

**4.** This section formerly provided for multiple situs treatment for businesses such as the debtor's in which "principal and essential acts of such business take place in any other locality." The general assembly deleted the quoted language by an amendment enacted in 1974. *See* Code of Virginia § 58–266.5 (1983 Cum.Supp.).

**5.** U.S. Const. art. VI, cl. 2.

per's interstate business where the tax was imposed only on that proportion of the shipper's total mileage which accrued while operating in Virginia waters. *Commonwealth v. Baltimore Steam Packet Company,* 193 Va. 55, 68 S.E.2d 137 (1951). The Virginia Supreme Court also has upheld a tax on telephone service imposed by a local jurisdiction when the tax was restricted solely to local, rather than long-distance, service. *The Chesapeake and Potomac Telephone Company of Virginia v. City of Newport News,* 196 Va. 627, 85 S.E.2d 345 (1955). In *Baltimore Steam Packet,* the court engaged in a lengthy discussion of the line of United States Supreme Court cases relating to valid and invalid state taxing of activity touching the stream of interstate commerce. The earmark of an impermissible tax is that it attempts to place upon interstate commerce " 'cumulative burdens not imposed on local commerce'." *Baltimore Steam Packet, supra* 193 Va. at 63, 68 S.E.2d 137, quoting *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938).

■ In the instant case, on the other hand, the County seeks to tax business activity of the debtor which takes place beyond the borders of Virginia. In support of its assessment against the debtor's total gross receipts, the County relies upon Section 4–7–1(a)(2) of the Fairfax County Code which states that the term "gross receipts" includes earnings from "all sales or services rendered or activities conducted within the County, both to persons within the County *and to persons outside the County.*" Fairfax County Code § 4–7–1(a)(2) (emphasis added). Such language is not unconstitutional on its face and, accordingly, it is the County's interpretation of the section which is at issue. The County's position, in essence, is that inclusion of sales or services "to persons outside the County" permits application of the tax to all income wherever earned. Such an interpretation overlooks the wording just prior which limits taxable gross receipts to those earned from sales, services rendered or activities "*conducted within the County.*" Fairfax County Code § 4–7–1(a)(2), (emphasis added).

Such an interpretation cannot be sustained as constitutional.

The County's assessing of its license tax against the total gross receipts of the debtor, including those earned in Maryland and the District of Columbia, brings the County within the purview of *Gwin, White and Prince, Inc. v. Henneford,* 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272 (1938), in which the Supreme Court struck down a Washington state tax measured by gross receipts on the marketing of fruit shipped from Washington to various states and foreign countries. The tax, one per cent of the total gross revenues of the business, was applied to every person engaged in a business activity in the State of Washington and was a tax on " 'the act or privilege of engaging in business.' " *Id.* at 435, 59 S.Ct. at 326. The Supreme Court found that although the tax nominally was imposed upon the appellant's business in Washington, "by the very method of its measurement [it] reaches the entire interstate commerce." *Id.* at 438, 59 S.Ct. at 327.

In striking down the tax, the Supreme Court stated:

> Such a tax, at least when not apportioned to the activities carried on within the state, burdens the commerce in the same manner and to the same extent as if the exaction were for the privilege of engaging in interstate commerce....
>
> Here the tax, measured by the entire volume of interstate commerce in which appellant participates, is not apportioned to its activities within the state.

*Id.* at 439, 59 S.Ct. at 327–328.

The tax in *Henneford,* which was assessed against the appellants' gross revenues from the sale of goods regardless of destination, was similar to the tax which the County seeks to impose upon the debtor's revenues earned from work performed in other jurisdictions. By seeking thus to tax all of the debtor's revenue, the County is attempting to abrogate the constitutional requirement of fair apportionment of local taxes on interstate commerce. The tax in *Henneford* and the tax sought to be im-

posed herein differ significantly from the tax on stevedoring which was upheld in *Association of Washington Stevedoring Companies.* In the stevedoring case, the tax was not upon the value of the goods moving in interstate commerce but upon the value of the activity of loading and unloading said goods within the state. Thus, that tax could not be "successfully attacked" as being unfairly apportioned. *Association of Washington Stevedoring Companies, supra,* 435 U.S. at 750, 98 S.Ct. at 1399.

■ The key to determining the validity of any state tax which reaches interstate commerce is "the practical effect of the exaction." *Association of Washington Stevedoring Companies, supra,* at 750, 98 S.Ct. at 1399. In examining the practical effect, apportionment is the critical element.

■ In the instant case, the County is not attempting to tax goods in transit but, rather, the value of business done by the debtor outside Virginia. When, as here, the debtor has paid taxes to Maryland and the District of Columbia based upon revenues generated by the work performed there, the imposition of a local tax upon total gross receipts, wherever earned, has the practical effect of burdening the debtor with cumulative taxation on its Maryland and District of Columbia earnings. Such a cumulative tax is not a fairly apportioned one.

In addition, the County argues that the income taxes paid by the debtor to Maryland and the District of Columbia cannot be offset because the only credit available under Virginia Code § 58–266.5 is for payment of other local license taxes. This argument is without merit.

Particularly in the case of a tax which is denominated as a "license" tax, "what it is called is not necessarily what it is." *Commonwealth v. Baltimore Steam Packet Company, supra,* 193 Va. at 68, 68 S.E.2d 137. The court, therefore, has a duty to determine the operation of the tax; the matter is not settled by the descriptive label selected by the taxing authority. In Virginia, the law is settled that "[i]f the tax in question is based upon income and is measured by that income in money or money's worth, as a net income tax, gross income tax, or gross receipts tax, it is an income tax." *City of Portsmouth v. Fred C. Gardner Company, Incorporated,* 215 Va. 491, 494, 211 S.E.2d 259 (1975) (citation omitted).

■ It is undisputed that the tax herein is computed annually as a percentage of gross receipts for the prior year. Accordingly, regardless of label, it is an income tax. The credit afforded for any "local license tax" paid to another jurisdiction also specifies that the credit is available only when said other local taxes are measured by volume of business transacted. Va.Code § 58–266.5(b)(i) (1974 Repl.vol.). Thus, the taxes which qualify for the credit also, in substance, are income taxes. Therefore, the County may not refuse credit to the debtor for taxes paid to Maryland and to the District of Columbia on the basis that said taxes were not local license taxes.

■ Finally, the debtor objects to the County's claim for taxes based on receipts earned within Virginia but outside Fairfax County. These revenues, being wholly intrastate in origin, may be susceptible to taxation by the County. *Stork Diaper Service, Incorporated v. City of Richmond,* 210 Va. 705, 173 S.E.2d 859 (1970). The debtor, while also disputing that portion of the County's claim which would subject all of the debtor's Virginia revenue to taxation by the County, has failed to establish that local taxes have been paid to other Virginia localities.

Accordingly, for all the foregoing reasons, the claim of Fairfax County for local license tax for the year 1979 will be allowed based upon the debtor's total Virginia receipts for 1978. Pursuant to Fairfax County Code § 4–7–19, said tax claim will be computed at the rate of thirteen cents per one hundred dollars of gross receipts. Testimony having established the debtor's 1978 Virginia receipts at $6,718,078.00, the claim of Fairfax County will be allowed in the amount of $8,733.53 as to the tax payable,

plus $873.35 for late filing, for a total amount of $9,606.88.

An appropriate Order will enter.