**In re O.P.M. LEASING SERVICES, INC., Debtor.**

**Bankruptcy Nos. 81 B 10533, 81 B 11203, 81 B 11749, 81 B 11850, 81 B 12193 and 83 B 10776.**

United States Bankruptcy Court, S.D. New York.

May 9, 1986.

See also, Bkrtcy., 61 B.R. 596.

Zalkin, Rodin & Goodman by Peter Levine, New York City, for trustee.

Atty. Gen. of Texas by Sue F. Eley, Austin, Tex., for State of Tex.

### DECISION AND ORDER DENYING PRIORITY TO CLAIM OF STATE OF TEXAS

BURTON R. LIFLAND, Bankruptcy Judge.

The State of Texas ("State") filed a proof of claim in the O.P.M. Leasing Services, Inc. ("O.P.M.") bankruptcy proceeding seeking, *inter alia,* $46,010.35 in unpaid franchise taxes. The State contends that its claim is entitled to priority status under § 507(a)(7)(A) of the Bankruptcy Reform Act of 1978 ("Code"). While not objecting to the amount of the claim, James P. Hassett, the Trustee for O.P.M. ("Trustee"), contends that the claim does not fall within § 507(a)(7)(A), but is properly classified as a general unsecured claim.

### I. FACTS

O.P.M. filed its Chapter 11 petition on March 11, 1981, and the Trustee was appointed by the United States Trustee pursuant to a March 24, 1981 order of this court. The State subsequently filed a number of claims against the O.P.M. estate, to which the Trustee objected. On December 17, 1985, the parties settled the Trustee's objections to all but one of the claims filed by the State.

The parties agree that the sole issue to be determined is whether unpaid franchise taxes are taxes "on or measured by income or gross receipts" within the meaning of § 507(a)(7)(A) of the Code. The State argues that the assessment O.P.M. owes under the Texas Franchise Tax is "measured by gross receipts" and is entitled to priority. The Trustee contends that the tax is not "measured by gross receipts."

For the reasons which follow, this court agrees with the Trustee that the State's claim is not entitled to priority status under § 507(a)(7)(A).

## II. DISCUSSION OF LAW

### A. Priorities Under the Code Are Narrowly Construed.

Section 507 of the Code assigns priorities to certain kinds of claims and expenses. In particular, subsection (a)(7)(A) provides that *"allowed unsecured claims of governmental units* [are entitled to a priority, but] *only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts,* ... (emphasis added). This section derives from § 64(a)(4) of the Bankruptcy Act of 1898 ("Act"), 11 U.S.C. § 104(a)(4) (repealed 1978), which gave priority to "taxes which bec[o]me legally due and owing by the bankrupt to the United States or to any state or any subdivision thereof." In *In re Lorber Industries of California, Inc.,* 675 F.2d 1062 (9th Cir.1982), the Court examined the legislative amendments made to § 64(a) of the Act and concluded that "the trend ... has been to erode the preferred status of taxes," *id.* at 1068 (citations and footnote omitted), because "[a]s accelerating taxation absorbed greater percentages of the bankrupt's estate, Congress recognized that broad priority classifications hampered the goal of equitable distribution of the estate and penalized general creditors." *Id.* at 1067–68 (citation omitted). Thus, for a claim to attain priority under § 64(a), "that status must be justified by clear statutory authorization." *Id.* at 1066 (citations omitted).

■ The *Lorber* court observed that § 507 of the Code was consistent with the trend of limiting taxes entitled to priority. *Id.* at 1068 n. 5. *See also In re Adams,* 40 B.R. 545, 546 n. 1 (E.D.Pa.1984) (Code "is narrower than its predecessor, section 64(a)(4) of the former Act, which accorded priority to any government tax"); *In re South Atlantic Packers Association, Inc.,* 28 B.R. 80, 81 (Bankr.D.S.C.1983) ("priority provisions of § 507 ... create special statuses for specified claims"). In *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98 (2d Cir.1986), the Second Circuit agreed, stating:

[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, *statutory priorities are narrowly construed. Joint Industry Board v. United States,* 391 U.S. 224, 228 [88 S.Ct. 1491, 1493, 20 L.Ed.2d 546] (1968); *In re United Merchants & Manufacturers, Inc.,* 597 F.2d 348, 349 (2d Cir.1979); *In re Mammoth Mart, Inc.,* 536 F.2d 950, 953 (1st Cir.1976). '[I]f one claimant is to be preferred over others, the purpose should be clear from the statute.' *Nathanson v. N.L.R.B.,* 344 U.S. 25, 29 [73 S.Ct. 80, 83, 97 L.Ed. 23] (1952). *See also Matter of Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984).

*Id.,* slip op. at 2643 (emphasis added). It is the claimant's burden to establish entitlement to priority treatment. *Standard Oil Co. v. Kurtz,* 330 F.2d 178, 180 (8th Cir. 1964).

Under § 507(a)(7)(A), a claim is entitled to priority only if, first, it is a tax as defined by federal law. *City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). *See also In re Adams,* 40 B.R. 545, 547 (E.D.Pa.1984) ("although a state's determination of whether something is a tax is persuasive and entitled to great weight, it is not binding" (citing *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906)). Second, the tax must also fit within the construct of § 507(a)(7)(A). Specifically, it must be "on or measured by income or gross receipts." The legislative history on this aspect of § 507(a)(7)(A) is scant and does not elucidate the meaning of this phrase.

Case law emphasis under the Act focussed on the first prong of the test, namely whether the claim constituted a tax. *See, e.g., Lorber,* 675 F.2d at 1066–68. For bankruptcy law purposes, a tax is considered "an involuntary pecuniary burden, regardless of name, imposed by or under the authority of the legislation for public purposes under the police or taxing power of the state." *In re Skjonsby Truck Line, Inc.,* 39 B.R. 971, 973 (Bankr.D.N.D.1984)

(quoting *Lorber* with approval); *In re South Atlantic Packers Association, Inc.*, 28 B.R. 80, 82 (Bankr.D.S.C.1983) (same); *In re Payne*, 27 B.R. 809, 813 (Bankr.D. Kan.1983) (same).

■ In the present case, neither the State nor the Trustee dispute that the unpaid franchise taxes *are* taxes as defined by *Skjonsby* and *Lorber*. The parties' disagreement centers on the second prong: whether the Texas Franchise Tax is a tax "on or measured by income or gross receipts." The State contends that the franchise tax falls within this priority category, even though it readily concedes that the franchise tax is on capital. *Transcript*, at 12. The State argues that the tax is measured by gross receipts and therefore comes within the § 507(a)(7)(A) umbrella. The State is attempting to persuade this court to look only at the terms used in the Texas statute and not what the tax is levied on. This court is not so persuaded. An examination of the substantive impact of the Texas Franchise Tax plainly demonstrates that the tax is on capital and measured by capital, but apportioned or allocated by gross receipts.

*B. The Texas Franchise Tax Allocates An Already Measured Tax Among Multistate Corporations By A Gross Receipts Ratio.*

Corporations doing business in Texas are required to pay franchise taxes. Tex.Tax Code Ann. § 171.001 (Vernon 1982). These taxes are based on a corporation's taxable capital, which is defined as the sum of its stated capital and surplus. Tex.Tax Code Ann. § 171.101 (Vernon 1982). Two franchise tax rates are set forth in Tex.Tax Code Ann. § 171.002(a) (Vernon 1982 & Supp.1986) as follows:

(1) $5.25 for each $1,000 or fraction of $1,000 of the *corporation's taxable capital* that is allocated to this state under Sections 171.106 or 171.108 of this Code; or (2) $68.

(emphasis added). A corporation pays the greater amount of the two taxes. Tex.Tax Code Ann. § 171.002(b) (Vernon 1982).

For corporations doing business not only in Texas but other states as well, the statute provides a formula for apportioning that part of the corporation's taxable capital subject to the Texas Franchise Tax. Tex.Tax Code Ann. § 171.106 (Vernon 1982), entitled "Determination of Amount of Taxable Capital Allocated to This State," specifically provides that:

[t]he part of a corporation's taxable capital that is allocated to this state and that is used to determine the amount of the tax imposed by this Chapter is equal to the corporation's total taxable capital multiplied by a fraction, the numerator of which is the corporation's gross receipts from business done in this state and the denominator of which is the corporation's gross receipts from its entire business.

The franchise tax owing for corporations doing business solely in Texas and corporations doing business in Texas and other states can be visualized as follows:

1) franchise tax owed by corporation doing business in Texas only = either $\frac{\$5.25}{\$1,000} \times$ total taxable capital or $68 [whichever is greater]

2) franchise tax owed by corporation doing business in more than one state = either $\frac{\$5.25}{\$1,000} \times$ total taxable capital $\times \frac{\text{gross receipts (Texas)}}{\text{gross receipts (Texas and other States)}}$ or $68 [whichever is greater]

The so-called gross receipts ratio utilized in § 171.106 is the State legislature's chosen method of apportioning an already measured tax on capital between Texas and other states.[1] The ratio reflects the percentage of business done in Texas and is applied *only* in those instances when a corporation does business in more than one state. Had business been done solely in Texas, the gross receipts ratio, even if applied, would not have affected the calculation of the "corporation's taxable capital" as that term is used in § 171.002. Indeed, were this debtor's business operations limited to Texas, no claim of priority could have been sustained.

The franchise tax is thus measured by the corporation's taxable capital, independent of gross receipts, and then apportioned between states by a gross receipts ratio.[2] In *Ford Motor Co. v. Beauchamp*, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304 (1939), the Supreme Court found that when a franchise tax "is based upon the proportion of the capital employed in Texas, calculated by the percentage of sales which are within the state, no provision of the Federal Constitution is violated." *Id.* at 335, 60 S.Ct. at 275. Similarly, in *Memphis Gas Co. v. Stone*, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948), the Supreme Court concluded that a similar gross receipts ratio provided a constitutionally acceptable method of allocating capital-based taxes among various states. The Court specifically stated that the tax "is not an unapportioned tax on gross receipts from the commerce itself. *It is measured by a proportion of the capital employed within the state.*" *Id.* at 93, 68 S.Ct. at 1482 (emphasis added).

It is a matter of statutory interpretation whether the § 171.106 tax formula uses gross receipts in the manner envisioned by the narrow priority language of § 507(a)(7)(A). The mere mention of gross receipts in the § 171.106 formula does not automatically activate § 507(a)(7)(A) and accord the State priority status. The State, however, makes precisely such an argument, ascribing an extraordinarily broad meaning to the word "measure" to encompass the word "allocate." This interpretation would emasculate the words of § 507(a)(7)(A), and would render the strict construction of the § 507(a)(7)(A) priority statute meaningless. The gross receipts ratio has no impact on the measurement of the tax as it relates to capital, and thus the tax in actuality is not on or measured by gross receipts.

The State, however, attempts to buttress its argument by citing a Texas Supreme Court case, *General Dynamics Corp. v. Bullock*, 547 S.W.2d 255 (Tex.1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 717, 54 L.Ed.2d 751 (1978), which held that:

the Texas franchise tax is an "income tax" *within the meaning of the Buck Act* either because the privilege to trans-

1. An alternate method of determining the amount of taxable capital allocated to Texas is set forth in § 171.108 as follows:
   [I]f the allocation and apportionment provisions of Sections 171.103, 171.104, and 171.106 of this code do not fairly represent the extent of the corporation's business done in this state, the corporation is entitled to request and the comptroller may grant permission for the corporation to use, with respect to all or any part of the corporation's business activity, an alternate allocation and apportionment method by:
   (1) a separate accounting;
   (2) inclusion of additional factors that will fairly represent the corporation's business activity in this state; or
   (3) the employment of any other method that equitably allocates and apportions the taxpayer's capital.

Conceivably, if the § 171.106 formula was deemed an unfair representation of the business done in Texas, a formula, not even mentioning gross receipts, could be utilized to apportion or allocate a corporation's taxable capital to Texas. Section 171.108 underscores that the gross receipts ratio is not integral to the determination of the franchise tax, but is used only to allocate taxable capital.

2. Numerically, differing amounts of taxable capital will result in different tax charges under the Texas statute. However, widely disparate gross receipts between corporations will yield the same amount of tax (assuming taxable capital to be the same for both), if the percentage of business done in Texas is the same.

act business in Texas represents income or because the tax 'is measured by gross receipts.'

*Id.* at 259 (emphasis added). The Buck Act defines "income tax" as "any tax levied on, with respect to, or measured by, net income, gross income or gross receipts." 4 U.S.C. § 110(c) (1982). The State contends that *Bullock* strongly supports its position that the Texas Franchise Tax is "on or measured by ... gross receipts" as that phrase is used in the Code. This reliance by the State is misplaced.

■ A state court's interpretation of a federal statute is not binding on a federal court. *Society for Savings v. Bowers,* 349 U.S. 143, 151, 75 S.Ct. 607, 611, 99 L.Ed. 950 (1955) (citing *Carpenter v. Shaw,* 280 U.S. 363, 367, 50 S.Ct. 121, 122, 74 L.Ed. 478 (1930)); *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906); *Gart v. Cole,* 263 F.2d 244, 248 (2d Cir.), *cert. denied,* 359 U.S. 978, 79 S.Ct. 898, 3 L.Ed.2d 929 (1959). It follows that a state court's interpretation of a state statute in the context of one federal statute is not binding on a federal court interpreting the same state statute in the context of a different federal statute. Thus, the Texas court's interpretation of the Texas Franchise Tax within the meaning of the Buck Act in the *Bullock* case is not binding on this court interpreting the Texas Franchise Tax in the context of § 507(a)(7)(A) of the Code. *See In re Adams,* 40 B.R. 545, 547 (E.D.Pa.1984) (a state's determination of whether something is a tax is not binding on a federal court) (citing *New Jersey v. Anderson,* 203 U.S. at 491, 27 S.Ct. at 139).

The Buck Act was designed to eliminate an inequity resulting under the Public Salary Tax Act of 1939 and allows states to tax the incomes of federal employees who reside on as well as outside of federal enclaves. *City of Portsmouth v. Fred C. Gardner Co.,* 215 Va. 491, 492, 211 S.E.2d 259, 261 (1975). It purposely ascribes a broad meaning to the words "income tax." *Id.,* 215 Va. at 494, 211 S.E.2d at 262. The definition "must of necessity cover a broad field because of the great variations to be found between the different state laws." *Bullock,* 547 S.W.2d at 257 (citing *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926, 929 (Tex.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 234 (1972)). The purposes behind the Buck Act and the Code are entirely different, and this court does not find the state court's interpretation of the Buck Act controlling in the present case.

The Code, on the other hand, construes priorities strictly in order to further stated policies of equitable distribution among creditors. *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.,* slip op. at 2643. *See also In re Kessler,* 23 B.R. 722, 725 (Bankr.S.D.N.Y.1982) ("broad purpose underlying the bankruptcy law is to bring about an equitable distribution of the debtor's estate to its creditors") (citations omitted). Given the Code's underlying policies and intent, this court finds that the Texas Franchise Tax is a capital-based tax, measured by capital, but apportioned by gross receipts. Because it does not qualify for priority treatment within the meaning of § 507(a)(7)(A), the State's claim for priority is denied.

### III. CONCLUSION

The State's claim for unpaid franchise taxes in the amount of $46,010.35 is allowed as a general unsecured claim.

It is SO ORDERED.