**In re CITY STORES COMPANY d/b/a Maison Blanche, Loveman's, Richards, Hearns, R. H. White, Franklin Simon, B. Lowenstein & Bros., Incorporated, W. & J. Sloane, Inc., the Mayer Furniture Co., d/b/a W. & J. Sloane, Debtors.**

**Bankruptcy Nos. 79 B 1320(EJR)—79 B 1323(EJR).**

United States Bankruptcy Court, S. D. New York.

July 13, 1982.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for debtors.

Irving J. Zipin, Edward J. Schwarz, New York City, for The Mall, Inc.

EDWARD J. RYAN, Bankruptcy Judge.

On July 27, 1979, City Stores Company ("City Stores"), and a number of its subsidiaries, filed petitions for an arrangement under Chapter XI, § 322 of the Bankruptcy Act and Rule 11–6 of the Rules of Bankruptcy Procedure, and thereafter were authorized to continue in the management and control of the businesses and properties as debtors in possession. Pursuant to orders of this court, these proceedings were substantively consolidated and the "Debtors' Consolidated Plan" was confirmed.

City Stores is engaged in the operation of retail stores. In conjunction therewith, City Stores entered into various real property lease arrangements. One such lease (the "lease") was entered into between City Stores and Levine Huntsville Development Corporation, the predecessor in interest of The Mall, Inc. (the "Mall"), for premises in a shopping center located in Huntsville, Alabama. Marx Realty and Improvement Co., Inc. ("Marx Realty"), manages the premises under an agreement with the Mall. (The Mall and Marx Realty are referred to collectively as the "landlord"). By order dated October 17, 1979, the lease, which runs until 1991 with several additional option periods, was affirmed by the debtor in possession.

By letter dated June 18, 1980, Hills Department Stores ("Hills"), offered to pay City Stores $600,000 for the latter's conditional assignment to Hills of City Stores' leasehold interest in the premises.

Subsequent to City Stores' assumption of the lease, the landlord sought to terminate the lease by reason of City Stores' alleged default under Section 13(b) of the lease, to wit: the cessation of operations in the premises. Following lengthy proceedings before this court (the "prior litigation"), judgment was entered determining that the lease was in full force and effect, for the purpose of City Stores' assigning same to Hills, a "conventional department store" consistent with the meaning and requirements of Section 21(a)(2) of the lease.

It was determined in this court's *Findings and Judgment Approving Assignment of Leasehold to Hills Department Store*, dated January 21, 1981, and its *Decision on Application to Assign Huntsville Mall Lease* ("decision"), dated February 26, 1981, that by accepting rent for the months of April through June, the landlord had waived its right under Section 13(b) of the lease to consider City Stores' cessation of operations as a default under the lease.

However, just as principles of equity entered into our prior decision, so equitable principles must be weighed herein. This court's earlier decision determined that the landlord was estopped from asserting the right to terminate because it had waived City Stores' default by accepting rent with full knowledge that City Stores had violated Section 13(b) of the lease. In fact, it was Mr. Marx's "lulling" of Mr. Farber, President of City Stores, into inaction concerning the default notice ultimately sent by the landlord on June 6, 1980, that weighed heavily in this court's finding that the landlord had waived City Stores' breach.

The evidence adduced during the lengthy trial showed that, at times, City Stores and the landlord had been working jointly to find a new tenant for the premises. Thus, the landlord's actions and forbearances were viewed as a waiver of the City Stores' default, thereby leaving the otherwise valid lease in full force and effect.

Part of the reason for determining waiver by the landlord, was that the tenant, City Stores, had seemingly found another conventional department store to which it could assign the remainder of its lease.

The prior litigation revolved around three main issues, each of which was tried separately pursuant to Federal Rules of Civil Procedure Rule 42(b). The first issue litigated determined that Hills was a "conventional department store" pursuant to Section 21(a)(2) of the lease and, therefore, a viable potential assignee. After passing this hurdle, the court tried the issue of whether, considering City Stores had a viable assignee, it was permitted to make such assignment considering its alleged breach of Section 13(b) of the lease, or had the landlord waived such alleged breach thereby precluding it from objecting to the proposed assignment on those grounds. This court determined that the default was waived so that City Stores could unconditionally assign to Hills, and that for this and all other purposes the lease remained in full force and effect. However, the third issue tried determined that City Stores' inability to get Hills to accept the assignment unconditionally vitiated City Stores' right to assign its

then valid lease to Hills. Since City Stores had no other potential assignees to take up the operations which it had ceased in the Spring of 1980, its failure to resume operations or find an acceptable assignee to immediately operate in the premises then constituted a default under Section 13(b) of the lease, entitling the landlord to the relief appropriate under Section 22 of the lease, to wit: surrender of the premises and damages.

In February 1981, City Stores turned over to the landlord the keys to the leased premises, consistent with the landlord's right to reenter and City Stores' obligation to relinquish possession of the premises.

Prior thereto, in January 1981, City Stores had moved to enjoin the landlord from terminating the lease based on any claim of new or continuing defaults after the original April-June 1980 period. A temporary restraining order was granted since the entire matter was then *sub judice* and the court wanted to maintain the status quo. However, at the February 4, 1981 hearing on the preliminary injunction, this court held that unless Hills assumed the lease, City Stores would be in default of Section 13(b) of the lease.

It became clear at the hearing that neither City Stores nor Hills was prepared to occupy and use the premises; consequently, this court ruled that the then existing injunction enjoining the landlord from exercising its rights to terminate the lease pursuant to Section 22 was vacated. Furthermore, the court held that the landlord's prior waiver of City Stores' default was not an all-time waiver of City Stores' obligation to use and occupy the premises for the balance of the leasehold term since such would be grossly inequitable.

On April 22, 1981, the landlord filed Claim No. 3652 in the amount of $1,617,-659.91, as an expense of administration based on City Stores' alleged breach of the lease in May 1980, resulting in the alleged termination of the lease. Claim No. 3652 consists of two parts; the first is a claim for $20,431.16 for outstanding percentage rent and the second is a claim for $1,596,-228.75, the total rent reserved under the lease.

By Order to Show Cause dated May 13, 1981, City Stores brought on an Application to Fix the Section 337 Confirmation Deposit [1] required with respect to the aforementioned claim. While City Stores denied any liability on account of the alleged breach, City Stores contended, and this court found, that the maximum possible liability, as a matter of law, would be rent or damages for the approximately three and one-half months between February 14, 1981 and the end of the period of administration. By order dated May 28, 1981, this court fixed the deposit in the amount of $55,832.15, representing alleged accrued and unpaid rent or damages pursuant to the lease upon which the claim is based during the period of administration through and including the month of June 1981.

By notice of motion, dated July 28, 1981 and finally returnable on October 7, 1981, City Stores moved to expunge the landlord's claim in its entirety. However, at the October 7, 1981 hearing, City Stores conceded that the landlord's claim for percentage rent from February 1979 to June 26, 1979 was properly due and owing. City Stores, therefore, consented to the entry of an order releasing approximately $20,000 to The Mall from the approximately $55,000 on deposit for confirmation.

Thus, the only issue before this court is whether the landlord's Claim No. 3652 in the amount of $1,617,659.91 [2] should be allowed in its entirety, in the reduced amount of $35,400.99,[3] or expunged in its entirety.

1. Bankruptcy Act § 337, 11 U.S.C. § 737 (1975).

2. That amount represents the approximately $13,000 a month of reserved rent which is claimed as damages.

3. That amount represents the difference be-

According to the terms of the lease,[4] City Stores is liable from the date of default for the rent reserved under the lease. City Stores affirmed the lease on October 17, 1979. Such affirmance carries with it all of the burdens as well as the benefits of the contract. *Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134, 141, 66 S.Ct. 937, 942, 90 L.Ed. 1132 (1946); *Hurley v. Atchison, Topeka & Santa Fe Ry. Co.*, 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729 (1909); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir. 1972). An executory contract cannot be rejected in part and assumed in part. *In re Klaber Bros., Inc.*, 173 F.Supp. 83 (S.D.N.Y.1959). The debtor cannot assume the contract for purposes of securing a profit from an assignment and then reject the damages provision if the assignment fails and the debtor defaults in its obligations thereunder. In addition, an assumption of an executory contract is binding and cannot be subsequently rejected in the absence of unusual circumstances. *In re Willow Cafeterias, Inc.*, 111 F.2d 83 (2d Cir. 1940). Therefore, City Stores is liable to the landlord according to the damages provision of Section 22 of the lease.

However, on May 28, 1981, the Section 337 Confirmation Deposit with respect to The Mall's claims was fixed by this court at $55,832.15; and on June 23, 1981, City Stores had its Plan of Reorganization confirmed. At the hearing on confirmation, no objection was raised as to the Plan's feasibility. In addition, no appeal was taken from the confirmation order or the order fixing the confirmation deposit. Therefore, the landlord cannot now attack either order.[5] The result is that the sum of $35,400.99 remains on deposit to fully satisfy the landlord's Claim No. 3652,[6] and the landlord is entitled to same.

Settle an appropriate order.

---

tween the confirmation deposit and the conceded percentage rent.

**4.** Section 22(b) of the lease provides, inter alia, "If Tenant defaults: . . .

"Landlord may, at its option, cancel and terminate this Lease on not less than ten (10) days' notice to Tenant and on the date specified in said notice, the term of this Lease shall terminate and expire and Tenant shall then quit and surrender the premises to Landlord, but Tenant shall remain liable as hereinafter provided. If the Lease shall have been so cancelled and terminated by Landlord, Landlord may, at any time thereafter, resume possession of the premises by any lawful means and remove Tenant or other occupants and their effects and hold the premises as if this Lease had not been made. Tenant further agrees that notwithstanding such reentry. Tenant shall remain liable for any rent or damages which may be due or sustained prior thereto under the terms of this Lease and Tenant shall pay the amount of the rent reserved under this Lease at the time herein stipulated for payment of rent for the balance of the term, less any amount received by Landlord during such period from others to whom the premises may be rented on such terms and conditions and at such rentals as Landlord, in its sole discretion, shall deem proper, provided, however, that such discretion is limited to fair and reasonable terms, conditions and rentals. 'Rent reserved hereunder' for the purposes of the foregoing provision of this subparagraph shall be deemed to be the average annual rent (computed upon the aggregate of the minimum rent and the percentage rent) for the five lease years preceding the year in which dispossession or termination takes place or, if the same takes place within the first five years of the term, for the lease year preceding the year in which termination or dispossession takes place. . . ."

**5.** *In re Oceana International, Inc.*, 376 F.Supp. 956 (S.D.N.Y.1974).

**6.** If, after payment of other claims, there remains an excess deposit within the court's control, the landlord would be entitled to receive an additional payment (up to City Stores' maximum liability pursuant to Section 22 of the lease) out of the excess deposit. *In re Greenpoint Metallic Bed Co., Inc.*, 113 F.2d 881, 884 (2d Cir. 1940); 8 *Collier on Bankruptcy* (14th ed.) ¶ 5.32 p. 636 (1978).