**In re Terry FLORES, Debtor.**

**Bankruptcy No. 82–03260–H2–3.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

July 12, 1983.

---

H.W. Gill, Houston, Tex., for debtor.

G.J. Knostman, Fulton Beach, Tex., for Chapter 13 Trustee.

J. Craig Cowgill, P.C., Karen Emmott, Houston, Tex., for Oscar & Willie Cowgill.

Memorandum Opinion

RANDOLPH F. WHELESS, Jr., Bankruptcy Judge.

This matter came on for confirmation of a Chapter 13 Plan. The Debtor, Terry Flores, sought to confirm a plan which sought to modify the terms of a contract for deed with Oscar C. and Willie Francis Cowgill. By his proposed Chapter 13 plan, Terry Flores sought to cure his arrearages *and* to change the monthly payment provisions under his contract for deed with the Cowgills from $752.08 per month for the

life of the original contract for deed to payment of $472.00 per month over the 60 month *period of the plan.* This proposed payment would be sufficient to pay his substantial arrearages under the contract and to pay off the balance owed under the contract; including interest.

The Cowgills contend that the Debtor has lost any rights under the contract prior to the filing of this proceeding. They contend that they had terminated his rights for default. In addition, they contend that the Debtor cannot modify the terms of the contract for deed but must cure the arrearage at the time of the assumption and pay the balance of the contract price over the period of its original terms.

## FACTS

Terry Flores and wife, Rebecca Flores entered into a contract for deed with Oscar C. and Willie Francis Cowgill on April 28, 1978. Under the terms of the contract for deed, the buyer-debtor agreed to pay to the seller the sum of $27,000.00 plus interest. This was payable $2,900.00 in cash to be paid June 1, 1978 with the balance ($24,000.00 plus interest at 8%) to be paid on the first day of each month in the amount of *$160.00* per month beginning July 1, 1978 and continuing to December 1, 1979. After that date, the buyer was to make monthly installment payments of *$752.08* per month, each payable on the first day of each month beginning January 1, 1980 and continuing until the principal sum with interest had been fully paid. Past due principal and interest was to bear interest at the rate of 10% per annum from majority until paid. There was an additional provision for 10% attorney's fees in the event of default.

Under the contract for deed, the buyer was to pay all taxes and assessments of every kind and nature and was to keep the premises insured and to keep the improvements in good repair.

The contract further provides that when the entire purchase price (as well as all other debts owed under the contract) is paid by the buyer in accordance with the terms, the seller is obligated to convey the property to the buyer by warranty deed.

In addition, the contract provides that if the buyer should default in the prompt payment in any indebtedness or should fail to perform any of the provisions of the agreement for a period of 10 days, the seller may elect to declare the entire unpaid indebtedness immediately due and payable *and enforce the collection thereof* or to declare the contract cancelled and of no further force and effect. In the event of the latter election, all monies theretofore paid or deposited are stated to be *forfeited* to sellers as liquidated damages.

The buyer has the right at any time after December 31, 1980 to pay the balance of the principal without penalty.

It appears that the Debtor made his payments under the contract for deed until the monthly payments accelerated from $160.00 to $752.08 per month beginning January 1, 1980. Thereafter the Debtor fell into default, as he could not make the full $752.08 payment each month.

The Cowgills tolerated the performance of the Debtor under the contract until on about August 30, 1982, at which time their attorney wrote a letter to the Debtor informing him of his default and giving him ten days to bring current the principal amount of $11,579.17 plus interest thereon for a total of $12,156.71 as of September 1, 1982.

The letter further provided that the Cowgills' attorney and Mr. Cowgill would meet with the Debtor to discuss the satisfaction of the past due amount and to schedule a meeting in the attorney's office on September 7, 1982 at 5:30 p.m. The letter further said:

"Failing to hear from you, or your failing to appear in my office, then under the terms of the contract for deed all monies paid by you will be forfeited as liquidated damages and an eviction process will be initiated to evict you from the property."

The Debtor *did* appear at the scheduled meeting but there was no resolution concerning the total unpaid and delinquent

principal and interest as of September 1, 1982.

On September 9, 1982 the attorney for the Cowgills wrote the Debtor an additional letter advising the Debtor that he had thirty days in which to secure financing to pay the balance and advising that if he had not refinanced or was not in a position to pay off the full amount of $15,747.39 by October 10, 1982, he should vacate the premises by November 1, 1982. The letter further contained advice that the Cowgills gave permission to refinance the property, in which event they would issue the general warranty deed required by the contract.

This proceeding was filed on October 21, 1982.

Mr. Flores testified that he worked twenty-three years for the same company doing welding, painting, shop work and carpentry. His take home pay is about $887.00 per month, but he works by the hour and sometimes his take home pay is a little more or a little less each month. Mr. Flores testified that he lives alone; his wife having died. He further testified that the property was worth $30,000.00.

■ With respect to the contention of the Cowgills that the property interest of Flores terminated prior to the filing of this proceeding, this Court determines to the contrary. First, the letter of August 30, 1982 conditioned the forfeiture by stating that *if* the Cowgills did not hear from Mr. Flores or *if* he failed to appear at the office, all monies paid by him would be forfeited as liquidated damages and an eviction process would be initiated to evict him from the property. However, Mr. Flores *did in fact appear* at the meeting, even though there was no resolution of the issue of the accumulated unpaid principal and interest on the property. This appearance satisfied the condition set out in the terms of the letter. The expressed intent and right to forfeit Mr. Flores interest cannot be based on a *satisfied* condition.

■ The letter of September 9, 1982 simply granted Mr. Flores thirty days in which to secure financing. Nothing was stated in this letter of the option of the Cowgills to terminate Mr. Flores interest.

In all probability this is because of the apparent willingness of the Cowgills to attempt to work with Mr. Flores in every reasonable way.

More importantly, however, are the provisions of Article 1301b of Vernon's Ann. Civ.Stat. of Texas. This statute provides that where a purchaser under a contract for deed has paid 20% or more of the purchase price, he is entitled to 60 days notice of the seller's intention to enforce the forfeiture and acceleration. In this instance, there were less than 60 days notice given by both the August 30, 1982 letter and the September 9, 1982 letter and, in addition, less than 60 days expired before the Debtor filed this proceeding on October 21, 1982. As a result, as a matter of law, there could not have been an acceleration of maturity since, under the evidence, the Debtor had paid more than 20% of the purchase price of the property.

Moreover this Texas Statute requires that the notice of this intent be conspicuously set out and printed in 10 point bold face type and include the following language:

#### NOTICE

YOU ARE LATE IN MAKING YOUR PAYMENT UNDER THE CONTRACT TO BUY YOUR HOME. UNLESS YOU MAKE THE PAYMENT BY (*date*) THE SELLER HAS THE RIGHT TO POSSESSION OF YOUR HOME AND TO KEEP ALL PAYMENTS YOU HAVE MADE TO DATE.

It thus appears that Article 1301b was not complied with in this instance prior to the filing of this proceeding, and therefore, the Debtor's interest was not terminated prior to the filing of this proceeding.

Next, however, the question of the Debtor's right to modify the contract for deed under the provisions of § 1322 of the United States Bankruptcy Code must be considered.

Under the provisions of § 365 of Title 11 (11 U.S.C. § 365), an executory contract cannot be rejected in part and assumed in part. Assumption of such a contract carries with it all of the burdens as well as all of the benefits of the contract. *In re City Stores Company,* 21 B.R. 809 (Bkrtcy.S.D.N.Y.1982); *In re Yonkers Hamilton Sanitorium Inc.,* 22 B.R. 427 (Bkrtcy.S. D.N.Y.1982) and *Thompson v. Texas Mexican Railway Company,* 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946).

Section 1322(b)(7) of the United States Bankruptcy Code, which provides for the contents of a Chapter 13 Plan, provides for the assumption or rejection of any executory contract or unexpired lease of the Debtor not previously rejected. However, there appears to be no language in that sub-section setting out the right to modify the terms of an assumed executory contract. It therefore appears that there is no *direct* and express authority in the Bankruptcy Code for the Debtor to modify the terms of the contract of deed, if it is deemed to be an executory contract.

In the case of *In re Booth,* 19 B.R. 53 (Bkrtcy.D.Utah, 1982), in a very well analyzed opinion by Judge Ralph R. Mabey, the Bankruptcy Court held that in a case where a Debtor was a *vendee* under a contract for deed, the contract should be construed as a lien rather than an executory contract. Judge Mabey determined that this holding is in harmony with the rationale of § 365(i) and § 365(j). Under those provisions of the Bankruptcy Code, if a Debtor or Trustee as *seller* rejects an executory contract of sale of real property, a purchaser in possession may remain in possession and pay off the contract balance. If the purchaser is not in possession, then that purchaser has a lien on the interest of the Debtor in the property for the recovery of any portion of the purchase price that has been paid.

Judge Mabey suggests that "... in the final analysis, executory contracts are measured not by a mutuality of commitments but by the nature of the parties and the goals of reorganization." Judge Mabey further asserts that it is the consequences of applying § 365 to a Debtor-Vendee, especially in terms of benefit to the estate, and the protection of creditors, not the *form* of the contract between the vendor and vendee, which should control in determining whether or not the contract is "an executory contract". Judge Mabey points out that where a Debtor is vendee, the estate is benefited more when the contract for deed is viewed as a lien than it is when it is viewed as an executory contract. The vendor under a contract for deed, although in substance a mortgagee, may receive an advantage over other lienors and the estate may be deprived of whatever equity exists in the property. The Bankruptcy Court, as a Court of Equity, regards substance over form, demands equality of treatment among creditors, and loathes forfeiture.

Judge Mabey then held that the contract should be treated as a lien, the vendor placed on a par with other lienors, and forfeiture and the loss of the equity prevented. Judge Mabey concludes that this result is analogous to the treatment of security interests disguised as leases. Judge Mabey lastly concludes that instead of taking the contract *cum onere,* the lien may be "dealt with" in the plan by scaling down the debt, reducing the interest rate, and extending the maturities. With or without the plan, the property may be sold free of the lien. Treating the contract as a lien thus allows more latitude in proposing a plan and thereby furthers the rehabilitation of the Debtor. The Creditor is adequately protected, he holds title as security and payments under the plan gives adequate protection of the *indebtedness.*

Judge Mabey concludes that executory contracts should be handled to assist in the Debtor's rehabilitation and cites H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977), U.S.Code Cong. & Admin.News, p. 6304.

If this Debtor is required to assume the contract for deed as an executory contract under § 1322(b)(7) he will be unable to do so under the existing circumstances. He simply does not have sufficient assets or the means of obtaining them to satisfy this requirement. Clearly treating the contract

for deed as an "executory contract" which must be assumed under § 1322(b)(7) would not "assist in the Debtor's rehabilitation".

Judge Mabey further points out that vendors have two rights under a contract for deed: the right to payment, which is not adequately protected, and the right to hold title as security which is adequately protected. While the right to payment is suspended, the interest in property is adequately protected. This strikes a balance between vendors, other creditors, and the estate.

In addition, Judge Mabey makes the point that "where possible the code should be given a Federal meaning. This permits uniformity in a national system; it promotes exegesis in line with bankruptcy policies."

Judge Mabey's reasoning in *Booth* was followed in *In re Cox,* 28 B.R. 588 (Bkrtcy. D.Idaho 1983). In that case, Bankruptcy Judge Merlin S. Young points out that where the Debtor is a vendee under a contract for deed, assumption may be an impossible burden with the result that any equity the Debtor may have in the asset of the amount of the unpaid purchase price will be lost. That is the precise situation that exists in the Flores case.

As noted by Judge Young the Bankruptcy Code does not attempt to define the term "executory contract" as used in § 365 and in § 1322. Purchase money mortgage transactions (including trust, deed, and security devices) have not been held to be executory contracts for bankruptcy purposes, although they are for future payment of the purchase price and often functionally the equivalent of a contract for sale of real estate. Judge Young agreed with the result in the *In re Booth* case decided by Judge Mabey.

In the case of *In re Gladding Corp.,* 22 B.R. 632, (Bkrtcy.D.Mass.1982), Bankruptcy Judge Paul W. Glennon points out that the Bankruptcy Court should not be bound by static definitions of what is an executory contract, but should strive to satisfy the purposes of the act in conjunction with the goals of the Debtor (or Trustee), in order that equity may be served.

None of the authorities located by this Court on this subject have discussed the provisions of § 1322(b)(10), which subsection provides that the Debtor's Chapter 13 plan may "include any other appropriate provision not inconsistent with this title." It thus appears that the provision of § 1322(b)(7) regarding the assumption of the executory contract could not be the *exclusive* remedy regarding executory contracts under § 1322(b); otherwise § 1322(b)(10) could not exist. It should further be pointed out that there is no requirement in § 1322(b)(7) that the Debtor promptly cure all the arrearages (as is provided in § 365(b); although there is a separate provision in § 1322(b)(3) for the curing of any default.

■ Therefore, it is this Court's opinion that this Court, acting as a Court of equity consistent with the purposes of the Bankruptcy Code, can approve a plan whereby a Debtor seeks to modify the rights of a vendor under a contract for deed wherein the Debtor is vendee and is in possession of the premises. Any other result would give vendors under contract for deed an advantage over other creditors ·of the estate where there is equity in the property, as there is in this case. For this reason the Court determines to confirm the plan of Terry Flores provided it is amended to comply with the provisions of § 1325(a)(4) and (5) so that the "vendor" can receive value, as of the effective date of the plan, of property to be distributed under the plan on the account of his claim in a sum not less than the allowed amount of such claim, and the value is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under the Chapter 7.

The Debtor has 30 days to make such an amendment and file it with this Court.

Counsel for the Debtor is requested to prepare and present an order in conformity with this opinion.