**In re GAMMA FISHING COMPANY, INC., a Puerto Rico corporation, Debtor.**

**Bankruptcy No. 85–01603–H11.**

United States Bankruptcy Court, S.D. California.

March 13, 1987.

Sullivan, McWilliams, Lewin & Markham, Jerry M. Cannon, San Diego, Cal., for debtor.

Jerry D. Cluff, Pain, Cluff & Olson, San Diego, Cal., for creditor Cutri.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### I.

### INTRODUCTION

At issue is a $40,775.00 claim against Gamma Fishing Company, Inc. ("debtor"), for an overdue insurance premium installment. Creditor Cosimo Cutri Insurance Company ("Cutri") contends that $39,800.00 of its claim is payable in full either as an administrative expense per 11 U.S.C. § 503(b)(1)(A), or as part of an executory contract assumed by debtor per 11 U.S.C. § 365. The debtor filed an objection to claim, contending the claim represents an unsecured pre petition debt and that Cutri is not entitled to any preferential treatment over the other pre petition, unsecured creditors. To resolve the dispute, this court must make a determination of the following issues:

1. Is the insurance premium installment a component of an executory contract assumed by debtor per 11 U.S.C. § 365?

2. Is the insurance premium installment a necessary cost of preserving the debtor's estate, entitling Cutri's claim to a priority status per 11 U.S.C. § 503(b)(1)(A)?

### II.

### STATEMENT OF FACTS

The debtor, which operates a 1,100 ton tuna purse seiner ("M/V Venturous"), filed a petition under Chapter 11 of the United States Bankruptcy Code on April 9, 1985. Several months before the petition was filed, Cutri and the debtor negotiated an agreement whereby Cutri, an insurance broker, procured a Lloyd's policy of insurance which insured debtor against liability claims arising from its operation of the M/V Venturous. Coverage became effective on September 30, 1984 for a period of twelve (12) months. The agreement provided for payment of the insurance premium in four quarterly installments of $39,800 each. Upon non-payment of any premium installment when due, Cutri had the right to cancel the coverage upon five days written notice to the debtor. The third and fourth installments were due on March 18, 1985 and June 16, 1985, respectively. The March 18, 1985 premium payment was unpaid and three weeks overdue when the debtor's Chapter 11 petition was filed on April 9, 1985. However, Cutri had not yet exercised its option to cancel the coverage.

After the filing of the petition, the M/V Venturous continued operating on fishing expeditions. On May 10, 1985, the vessel unloaded 634 tons of fish in Puerto Rico, the net proceeds amounted to approximately $495,000. On May 24, 1985, the debtor scheduled an expedited hearing in this court to obtain authorization to apply the catch proceeds towards payment of certain expenses, which would enable the vessel to undertake a future expedition. Only Southwest Production Credit Association, the largest secured creditor whose cash collateral was the catch proceeds, was given notice of the hearing. One of the listed expenses in the debtor's budget was for insurance in the amount of $39,000. Cutri was not represented by counsel at this expedited hearing and the transcript of that hearing discloses no discussion of whether the specific policy procured by Cutri was to be assumed by the debtor. The court order which issued required that "the debtor herein shall maintain such navigational insurance on the M/V Venturous and P & I coverage as is proscribed (sic) by the debtor's mortgage and loan agreements with Southwest California Production Credit Association."

After the hearing on May 30, 1985, Cutri received a check for $39,800 from the debtor and applied the entire amount to the third installment as if the pre petition agreement was still effective. No further payments towards the policy premium were received by Cutri. On April 14, 1986, Cutri filed a proof of claim for the fourth premium installment against the debtor in the

amount of $40,775.00, claiming an administration priority for $39,800.00 of that amount. Debtor does not dispute the amount owed Cutri, but objects to the claim of priority.

## III.

## DISCUSSION

Cutri contends the agreement to procure insurance is an executory contract which has been assumed by the debtor. Therefore, the initial question to be resolved is whether a contract procuring insurance for a term of one year is an executory contract within the meaning of 11 U.S.C. § 365. Congress has chosen not to define "executory contract" but the legislative history to the 1978 enactment of the Bankruptcy Code states, however, that "though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5844, 5963, 6303. This Countryman [1] definition of executory contracts adopted by the legislative history is likewise employed in the case law applicable to this circuit. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 at n. 6, 104 S.Ct. 1188, 1194 at n. 6, 79 L.Ed.2d 482; *In re Coast Trading Co.*, 744 F.2d 686, 692 (9th Cir. 1984); *In re Alexander*, 670 F.2d 885 (9th Cir.1982).

The contractual agreement before the court, procuring the Lloyd's insurance policy, imposes substantial obligations of continuing performance on both the debtor and Cutri. The debtor has the obligation to continue payments on the installment premiums, while Cutri must continue to keep the insurance policy in effect. Therefore, the agreement fulfills the requirements of an executory contract. *Accord, In re Pester Refining Co.*, 58 B.R. 189, 191 (Bankr. S.D. Iowa 1985); *In re B. Siegel Co.*, 51 B.R. 159, 163 (Bankr. E.D.Mich.1985); *In re Garnas*, 38 B.R. 221, 223 (Bankr. D.N.D. 1984).[2]

The next step in the court's analysis is to determine whether this executory contract was either assumed or rejected by the debtor. The basic power of a trustee, or in this case, a debtor in possession, to either assume or reject an executory contract is expressly authorized in 11 U.S.C. § 365(a) which states in pertinent part: "[T]he trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor." (Emphasis added). This subsection clearly requires the assumption of an executory contract to be effectuated through an express order of the court. *In re Harris Management Co.*, 791 F.2d 1412, 1414 (9th Cir.1986); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 380 (7th Cir. 1983); *In re Kelly Lyn Franchise Co.*, 26 B.R. 441, 445 (Bankr. M.D.Tenn.1983).[3]

---

**1.** See Countryman, *Executory Contracts in Bankruptcy,* Part I, 57 Minn.L.Rev. 439, 460 (1973).

**2.** Debtor cites the decision of *In re Gladding Corp.*, 22 B.R. 632 (Bankr.D.Mass.1982), which held that an insurance policy is not an executory contract. Gladding was decided under the old Bankruptcy Act of 1898. The court apparently believed that a debtor could "assume" an executory contract simply by rendering performance, and was concerned that any pre petition portion of the insurance contract premiums would be accorded administrative expense priority status, which would be inequitable as to the other unsecured creditors, the court concluded, "it serves the policy of the Act and the debtor's reorganization goals best to treat the contracts as non executory." *Id.* at

636. This *ad hoc* approach is not consistent with the established practice followed in this circuit of using the Countryman definition to determine whether contracts are executory. Furthermore, the *Gladding* court could have reached its equitable result by holding that the contract was not formerly assumed by the debtor. *See, In re B. Siegel Co.*, 51 B.R. 159, 162–163 (Bankr.E.D.Mich.1985).

**3.** An executory contract may be assumed or rejected through the adoption of a court approved reorganization plan. 11 U.S.C. § 1123(b)(2). Cutri's contention that the executory contract was assumed in the reorganization plan is without merit as the contract for insurance expired on September 30, 1985, well before the reorganization plan was approved on

■ Cutri relies on *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443 (Bankr. E.D. Cal.1982), as well as case law decided under the old Bankruptcy Act of 1898 [4] to support its contention that assumption of an executory contract may be accomplished by implication or other informal action of the debtor in possession. In *Ridgewood*, the debtor accepted a second shipment of goods pursuant to an executory purchase order contract. The *Ridgewood* opinion states, "since the debtor's assumption of this executory contract was an act in the ordinary course of business, pursuant to 11 U.S.C. § 1108, the debtor was not required to obtain court approval to continue operating its business." *Id.* at 445. *Ridgewood* cites no authority to support its broad, inherent conclusion that the explicit, unqualified requirement of court approval in § 365(a) has no impetus whenever an executory contract involves the ordinary course of a debtor's business. Most pre petition executory contracts are executed in the ordinary course of business, and to give the debtor in possession carte blanche discretion to manage his affairs would frustrate the objectives of Chapter 11. *In re Speed Fab-Crete of Nevada*, 57 B.R. 720, 722 (Bankr.D.Nev.1986). The requirement of court approval furthers the Bankruptcy Code's policy of maximizing the value of the estate for the benefit of all creditors, while preserving certain rights of parties to contracts with the debtor. *In re Kelly Lyn Franchise Co., supra* at 445.

■ An executory contract assumed in bankruptcy is accompanied by all its provisions and conditions. It may not be assumed in part and rejected in part. *In re Nitec Paper Corp.*, 43 B.R. 492, 498 (Bankr. S.D.N.Y.1984); *In re Flores*, 32 B.R. 455, 459 (Bankr.S.D.Tex.1983); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir.1985). The decision, particularly if it is one to assume, may have grave consequences for the estate since assumption must be complete, and the expenses and liabilities incurred will be expenses of administration. *In re Coast Trading Co.*, 744 F.2d 686, 692 (9th Cir. 1984). In the case of a defaulted executory contract, the consequences of an assumption can be particularly harsh to the estate. 11 U.S.C. § 365(b)(1) states:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, *at the time of assumption of such contract or lease, the trustee* ... (emphasis added)

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■ On the date of the debtor's petition the executory contract was three weeks in default. To assume the contract, the Code required the debtor to appear before the court and satisfy the provisions of

---

October 16, 1986. Accordingly, the contract was incapable of being assumed in the reorganization plan.

**4.** Case law interpreting the old Bankruptcy Act is no longer relevant towards determining the issue of whether formal court approval is necessary to assume or reject an executory contract. The explicit requirement of court approval in § 365 of the United States Bankruptcy Code as enacted in 1978 and amended in 1984 represents a significant departure from its predecessor, § 70b of the Bankruptcy Act, 11 U.S.C. § 110(b) (repealed). Section 70b was silent as to whether court approval was necessary for a

debtor to assume or reject an executory contract. Former Bankruptcy Rule 607 stated that, "[W]henever practicable, the trustee shall obtain approval of the court before he assumes a contract." This absence of an explicit requirement for formal court approval led to some courts holding that informal acts of the trustee without court approval could constitute assumption. However, even under the Act, "the majority rule and the better rule was that judicial approval was required." *In re Kelly Lyn Franchise Co., supra* at 444. *See also, Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.*, 419 F.Supp. 778 (D.C.Cal.1976) aff'd, 613 F.2d 210 (9th Cir. 1980).

§ 365(b)(1). Cutri has offered no evidence which demonstrates that the debtor fulfilled these requirements. Furthermore, debtor did not comply with Bankruptcy Rule 6006, which provides the procedure to be followed when assuming or rejecting an executory contract.[5] Assumption or rejection by implication or by other informal action leads inevitably to the kind of confusion and uncertainty exemplified by this case. *In re Kelly Lyn Franchise Co., supra* at 444. The cases which have considered the application of § 365 to an executory contract or lease have consistently decided that § 365(a) means what it says, i.e., that an express order of the judge approving an assumption or rejection is required. *In re Treat Fitness Center, Inc.,* 60 B.R. 878 (9th Cir. BAP 1986); *In re Spats Restaurant & Saloon,* 64 B.R. 442 (Bankr.D.Nev.1986); *In re Speed Fab-Crete of Nevada, supra* at 723; *In re Marple Publishing Co.,* 20 B.R. 933, 935 (Bankr.E.D.Pa.1982); *In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462 (Bankr.S. D.Cal.1982). Accordingly, this court holds that 11 U.S.C. § 365(a) requires specific court approval for a debtor to assume an executory contract, and that the debtor did not fulfill this requirement.

## IV.

Cutri's other assertion proposes that the premiums for the insurance policy should be classified as an administrative priority expense pursuant to 11 U.S.C. § 503(b)(1)(A) which provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including ---
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ...

No attempt is made by § 503(b)(1)(A) to enumerate specifically all of the necessary costs and expenses which could potentially qualify for administrative priority. The term "including" is not one of limitation, but rather signifies the appropriateness of considering any cost or expense which is necessary. 3 *Collier on Bankruptcy,* 503–517 (15th ed. 1986). The phrase "actual, necessary" has been interpreted to mean those expenditures of the trustee for the cost of operating a business, ... for taxes *and other costs incidental to the protection and conservation of the estate. In re Hilburn,* 62 B.R. 597, 600 (Bankr.N.D. Miss.1986).

The purchase of insurance is a recognized means of protecting and preserving the estate. 2 *Collier Bankruptcy Manual,* 503–517 (3d ed. 1986). Indeed, the July 31, 1985 court order governing disposition of certain cash collateral required the debtor to "maintain such navigational insurance on the M/V Venturous and P & I coverage as is proscribed (sic) by the debtor's mortgage and loan agreements with Southwest Production Credit Association." Protection against personal injury to the crew and property damage to the vessel and fishing gear was especially necessary due to the inherently dangerous business of operating a tuna boat. A catastrophe at sea or a liability claim of an injured crew man would have severe consequences not only to the tenuous existence of the debtor, but to Southwest Production Credit Association and the general unsecured creditors as well.

11 U.S.C. § 503(b)(1)(A) specifically limits allowable administrative expenses to those incurred "after the commencement of the case." The debtor contends that since the agreement to procure insurance was negotiated and executed pre petition, Cutri's claim is not entitled to administrative expense priority, but rather falls into the class of general unsecured creditors. The debtor cites *In re Jartran,* 732 F.2d 584

---

5. Rule 6006(c) provides that when a motion is made pursuant to subdivision (a), the court shall set a hearing on notice to the other party to the contract and to other parties in interest as the court may direct. For the debtor to assume the contract, it needed to serve notice upon Cutri and to such other parties as directed by the court.

(7th Cir.1984) in support of its contention that the sole rationale behind § 503(b)(1)(A) is to protect creditors who extend credit to the debtor *after* the filing of the petition. *Jartran, supra* concerned a pre petition agreement for the placement of classified advertisements in various directories; the ads were published after the debtor filed its Chapter 11 petition. Due to the peculiar nature of the directory industry, the placement of classified ads were irrevocable six months before the publication date. The six month cut-off date became effective *before* the petition was filed. The *Jartran* court, in denying the creditor's request for an administrative expense priority, repeatedly underscored in its opinion that the key fact in its decision was the irrevocable commitment resulting in the trustee's inability to "elect" to receive or reject the benefits under the contract after the filing of the petition. The court's emphasis on "election" implies that the rationale behind § 503(b)(1)(A) is not solely to protect creditors who extend credit to the debtor after the filing of the petition, but may as well protect pre petition creditors who provide benefits to the estate pending assumption or rejection of an executory contract.

In the case at bar, the debtor undeniably had the election to assume or reject the executory contract. In *In re N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984), the Supreme Court stated:

> If the trustee *elects to continue to receive benefits* from the other party to an executory contract pending a decision to reject or assume the contract, the trustee is obligated to pay for the reasonable value of those services ... which, depending on the services of a particular

contract, may be what is specified in the contract. (Emphasis added).

*See also, In re O.P.M. Leasing Services, Inc.*, 56 B.R. 678, 683 (Bankr.S.D.N.Y. 1986).

In regard to pre petition rental agreements, the law is well settled that during the period pending either rejection or assumption of a lease, the debtor must pay a reasonable administrative expense if the premises are used during this period, and such use is reasonable and necessary to the continuance of the business. *In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr.S.D.Cal.1980); *See, Philadelphia Co. v. Dipple*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re Hilburn*, 62 B.R. 597, 600-01 (Bankr.N.D.Miss. 1986); *In re Nordyke*, 43 B.R. 856, 863 (Bankr.D.Or.1984).

█ Requiring a debtor to reasonably compensate for the value of post petition benefits received pending the assumption or rejection of a pre petition executory contract for insurance is in furtherence with the equitable objectives of the bankruptcy court. When the debtor filed its petition, the automatic stay imposed by 11 U.S.C. § 362(a)(3) served to prevent Cutri from terminating the agreement even though the debtor was in default.[6] The debtor's right to receive the benefit of insurance coverage continued until either the contract was rejected, assumed, expired on its own terms, or Cutri was granted a relief from stay pursuant to 11 U.S.C. § 362(d).[7] The debtor was under no time restrictions in which to reject or assume the contract and could have received post petition benefits until the contract expired on its face. Allowing the debtor to escape full liability for these post petition benefits would impose a harsh inequity upon Cutri.[8] *See, In*

---

6. 11 U.S.C. § 362(c) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Insurance contracts are embraced in the statutory language of "property." *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984); *A.H. Robins Co. Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986); *In re Pester Refining Co.*, 58 B.R. 189, 191-92 (Bankr.S.D.Iowa 1985).

7. An order for relief from stay would be unlikely here where the insurance contract was a necessary component to an effective reorganization.

8. The debtor has not alleged, nor offered any evidence that it procurred insurance under a new policy after the petition date. The four premium installments to be paid under the policy were $39,800 each. The post petition check from debtor to Cutri was drawn in the amount

*re Nordyke,* 43 B.R. 856, 863 (Bankr.D.Or. 1984).

The remaining question to be resolved is the amount which should be awarded Cutri as an administrative priority and the amount which represents a pre petition unsecured claim. When the petition was filed, the third and final premium installments remained unpaid and the third installment was 21 days in arrears. The debtor has paid Cutri $39,800.00, or the equivalent of one installment, during the post petition period. The undisputed amount owed is $40,775.00 of which Cutri claims an administrative expense of $39,-800.00. This Court's research has revealed no statutory provision or case law authority directing how to apportion a post petition premium payment towards an insurance policy which benefits the estate, where a premium amount was owing at the time the petition was filed. However, the situation before this court is very similar to that wherein a rental lease is executed pre petition and then the subsequent debtor in possession uses the premises without assuming or rejecting the executory contract. The case law determining the appropriation of rental payments in this analogous situation is therefore particularly helpful to this court.

Such authority provides that the amount of compensation to the non-debtor lessor is presumably determinable by an allocation of the rent reserved in the lease on a pro rata basis for the term of the debtor's possession *since the date of the petition. In re Fredrick Meats, Inc.,* 483 F.2d 951, 952 (9th Cir.1973); *In re Tucci,* 47 B.R. 328, 333 (Bankr.E.D.Va.1985); *In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr.S.D.Cal.1980).

■ Accordingly, this court holds that a debtor receiving necessary benefits from a pre petition executory insurance contract must accord the non-debtor party an administrative expense priority for the pro rata share of the premium, during the period in which the estate received benefits from the contract.

## IV.

### CONCLUSION

For the foregoing reasons, this court finds that of the $40,775.00 claim by Cutri, $30,615.38 is entitled to administrative expense priority per 11 U.S.C. § 503(b)(1)(A). This amount represents the unpaid third quarterly installment premium of $39,-800.00 for 3 months (91 days) of coverage, less the pro rata amount of $9,184.62 for the 21 day period between the original due date of the third premium installment (March 18, 1985) and the date of debtor's petition (April 9, 1985). The remaining amount, $10,159.62 ($40,775.00—$30,-615.38) constitutes a pre petition unsecured claim.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for claimant Cutri, shall prepare an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

of $39,800. Therefore, it is obvious that the debtor intended the post petition operations of

the Venturous to be insured under the original policy.