**In the Matter of LOCKSPUR, INC., dba Bon Voyage Travel Service, Debtor.**

Bankruptcy No. 86–04418.

United States Bankruptcy Court, E.D. Louisiana.

April 9, 1987.

R. Patrick Vance, New Orleans, La., for Airline Reporting Corp.

Robert G. Stassi, New Orleans, La., for debtor.

FINDINGS OF FACT
CONCLUSIONS OF LAW

THOMAS M. BRAHNEY, III, Chief Judge.

Airline Reporting Corporation's (ARC) Motion for Relief from Automatic Stay or, in the Alternative, Adequate Protection, came on for hearing on December 16, 1986. After consideration of the Motion, the evidence introduced during the hearing, the memoranda, briefs and other supporting documentation submitted, and the records and files of this case, this Court makes the following Findings of Fact and Conclusions of Law, pursuant to Rule 7052 of the Bankruptcy Rules and Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT

1. Effective February 3, 1986, ARC and Lockspur, Inc., dba Bon Voyage Travel Service (Debtor), executed the ARC Agent Reporting Agreement (ARC Agreement).

2. Pursuant to the ARC Agreement and according to the testimony of Lloyd South, Assistant Manager of Financial Recovery for ARC, ARC agreed to entrust the Debtor with traffic documents (i.e., blank, standard form airline tickets and other valuable, blank, standard form accountable documents) for use by the Debtor in the issuance of airline tickets and other instruments of value. Traffic documents are unique, multi-coupon, serially numbered forms.

3. Individual airlines, in their discretion, entrust travel agents, such as the Debtor, with airline identification plates which are small, flat, rectangular, metal items, each of which is embossed with the trade name, logo and three-digit identification code number of the airline to which the plate belongs.

4. An identification plate is used in a validation machine (similar to that often used by merchants in recording credit card transactions) to imprint the embossed information on a traffic document and turn it into a particular airline ticket or other instrument of value for issuance to the Debtor's customers.

5. When a traffic document is issued as an airline ticket or an instrument of value, it becomes a contract between the customer and the airline and is valued at the dollar amount indicated on the face of the ticket or instrument.

6. Traffic documents are similar to blank checks in that the face amount of the traffic document will vary depending on the cost of the airline transportation or ancillary services requested by the customer.

7. Irrespective of whether an agent, such as the Debtor, received payment from the customer or whether the agent pays ARC or the airlines, the airlines must honor the customer's airline ticket.

8. When the Debtor sells air transportation and issues a traffic document in connection therewith, the Debtor is paid by cash or a credit card. The ARC Agreement requires the Debtor to designate a bank account for the deposit of proceeds for such sales, and authorizes ARC to draft that account to obtain the money.

9. The proceeds of the sales, less commissions, are held in trust by the agent for the airlines.

10. The ARC Agreement requires the Debtor to give to ARC each week a complete and accurate report of all sales on which traffic documents are issued, and it is on the basis of this report that ARC determines the amount to be drafted from the agent's account.

11. Pursuant to the ARC Agreement, ARC cannot draft the Debtor's bank account until the tenth day after the close of the weekly sales period. Lloyd South testified that it generally takes three or four additional days before ARC is notified that the check was honored or dishonored.

12. During this approximately three-week period (i.e., from the first day of a weekly reporting period to the date ARC is notified that the draft was honored or dishonored), the Debtor is permitted to issue other traffic documents, and the individual airlines are required to honor those traffic documents.

13. The ARC Agreement does *not* require the Debtor to maintain a segregated bank account for the deposit of proceeds from the sale of travel documents. Accordingly, the Debtor is permitted to withdraw funds from its bank account at any time.

14. The Debtor is indebted to ARC for pre-petition claims in the amount of $68,461.81, said sum representing the proceeds of sales, less commissions, for the weeks ending October 12, 1986, October 19, 1986, October 26, 1986 and November 2, 1986.

15. Mr. South testified that based on its overall gross cash sales, the debtor was required under the Contract to provide to ARC a $50,000.00 surety bond or letter of credit. The Debtor only provided ARC with a $10,000.00 letter of credit. Thus, the indebtedness owed to ARC in the amount of $68,461.81 exceeds the maximum limit of liability under the $10,000.00 letter of credit.

16. Pursuant to the ARC Agreement, if a travel agent, such as the Debtor, is in default, he may only purchase pre-paid special value tickets, *and* in lieu of surrendering the traffic documents and airline identification plates, he must provide a separate bond valued at the amount of the average value of ARC traffic documents previously issued by the agent, times the number of documents to be retained. For example, if $200.00 is the average value of the traffic documents previously issued to the Debtor, and the Debtor will be in need of 500 traffic documents a week, the Debtor will be required to post a $100,000.00 bond.

17. When Mr. Schrimsher, the Debtor's representative, was asked whether the Debtor would be able to post a bond, he responded "it would be difficult."

18. Based on the testimony of Mr. South and the language or the ARC Agreement, this Court finds that the ARC Agreement is a contract to extend financial accommodations to the Debtor.

19. This Court also finds that the Debtor will be unable to post the surety bond required under the ARC Agreement; thus the Debtor cannot provide adequate assurance of future performance under the contract.

20. This Court further finds that the Debtor will be unable to promptly cure the pre-petition default in the amount of $68,461.81.

21. To the extent any of the following Conclusions of Law constitute Findings of Fact, they are hereby adopted as Findings of Fact.

## CONCLUSIONS OF LAW

1. To the extent any of the above Findings of Fact constitute Conclusions of Law, they are hereby adopted as Conclusions of Law.

2. 11 U.S.C. § 365(c)(2) provides that an executory contract cannot be assumed if "such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the Debtor, or to issue a security of the Debtor."

3. The ARC Agreement is an executory contract to extend financial accommodations to the Debtor and, thus, it cannot be assumed by the Debtor.

4. Even if the ARC Agreement could be assumed, 11 U.S.C. § 365(b)(1) requires that the Debtor: (1) cure or provide adequate assurance that it will promptly cure all defaults; (2) compensate, or provide adequate assurance that it will promptly compensate, for any actual pecuniary loss resulting from said default; and (3) provide adequate assurance of future performance under the contract.

5. The Debtor cannot cure or provide adequate assurance that it will promptly cure the pre-petition default in the amount of $68,461.81. Accordingly, the ARC Agreement cannot be assumed.

6. The Debtor is unable to post a surety bond or provide other adequate assurance of future performance under the contract. Accordingly, the ARC Agreement cannot be assumed.

7. Furthermore, an assumed contract or lease is accompanied by all its provisions and conditions. *In re Nashville White Trucks, Inc.*, 5 B.R. 112, 116 (B.Ct. M.D.Tenn.1980). An executory contract cannot be rejected in part and assumed in part; the Debtor must assume both the benefits and the burdens of the contract. *In re Flores*, 32 B.R. 455, 459 (B.Ct.S.D. Tex.1983). The Bankruptcy Code does not grant a Debtor in bankruptcy greater rights and powers under the contract that he had outside bankruptcy. *In re Nashville White Trucks, Inc.*, 5 B.R. 112, 117 (B.Ct.M.D.Tenn.1980).

8. The ARC Agreement requires that if the Debtor is unable to satisfy its debts to ARC within the prescribed period of time, the agent may only purchase pre-paid special value tickets to be provided by ARC; and, in lieu of the agent surrendering its traffic documents and airline identification plates, the agent must provide a separate bond to ARC, the amount of which is based on the average value of ARC traffic documents previously issued

**40**

by the agent times the number of documents to be retained.

9. The debtor cannot provide a bond in the amount required under the contract. Accordingly, the Debtor will be unable to assume the ARC Agreement.

10. In addition, the Debtor is required to provide adequate protection to ARC for its interest in the traffic documents and airline identification plates. 11 U.S.C. § 362(d).

11. The Debtor bears the burden of proof on the issue of whether it can provide adequate protection to ARC. *See* 11 U.S.C. § 362(g)(2).

12. The Debtor has not sustained its burden of proof on the issue of adequate protection. Accordingly, ARC has the right to obtain relief from the automatic stay.

Based on the Findings of Fact and Conclusions of Law above, this Court will enter an Order granting Airlines Reporting Corporation immediate and unconditional relief from the automatic stay so that Airlines Reporting Corporation may retake possession of the travel documents and identification plates and terminate the ARC Agreement.